MERIDIAN LIGHT & RAILWAY CO. *v.* MRS. MACKIE
SLAUGHTER.

[53 South. 952.]

1. STREETS.    *Street Railroads.    Voluntary abatement of nuisance.    Damages.*

Where a street car company excavates a street and constructs and maintains a track therein and destroys the use of the street for all purpose except that of its cars, and an adjacent property owner files a bill praying that if the court shall find that the continued maintenance of the nuisance **would destroy the** ready and easy ingress and egress to and from her property, and that the use of the street for ordinary travel would be impaired, a decree be rendered abating such nuisance and enjoining the street car company from its further maintenance, in which prayer the street car company joined in its answer and cross bill. The court should have granted the prayer of complainant thus joined in by respondent. The decree should be for the abatement of the nuisance and enjoining its further maintenance and operation and awarding complainant damages for injury to her property up to the time of such decree.

2. DAMAGES FOR PERMANENT INJURY.

Damages for permanent injury to real property are not recoverable when defendant is willing and anxious to desist from further injury.

3. VOLUNTARY ABATEMENT OF NUISANCE.

A party maintaining a nuisance to the damage of the real property of another may voluntarily abate such nuisance and thereby avoid liability for permanent injury to such property.

APPEAL from chancery court, Lauderdale county.

HON. SAMUEL WHITMAN, Chancellor.

Mrs. Slaughter, appellee, was complainant in the court below; the Meridian Light & Railway Company, appellant, was defendant there. From a decree in favor of complainant defendant appeals.

During the year 1906, the Meridian Light & Railway Company obtained from the municipal authorities of

the city of Meridian the right to construct and operate a street railway line on certain streets in the city of Meridian, one of the streets being Twelfth avenue. This avenue is only forty feet wide from property line to property line. The sidewalk on one side is eight feet wide, and the sidewalk on the other side is nine feet wide, leaving a space for the street proper of twenty-three feet, down the center of which the railway company has placed its line. When the car is in operation it occupies a space of eight feet in the center of the street, leaving a space of six feet, two inches between the outer edge of the car and the curb. The standard-gauge wagon is about six feet from outer edge to outer edge of hub, according to the testimony, leaving only about two inches of space between the car and wagon when passing on the street. The city ordinances permit only an eight-foot sidewalk on avenues of this character and width. Mrs. Slaughter owns an entire block abutting this street, except about seventy-two feet owned by another party; Mrs. Slaughter's frontage being about two hundred and seventeen feet on this avenue. On the 12th day of July, 1906, Mrs. Slaughter filed a bill in the chancery court seeking to restrain the railway company from operating its road on Twelfth avenue until they had compensated her for the damage done her property by the operation of the street railway, and, further for damage claimed because of certain excavations made by the company in placing their line on the avenue.

The property in question had formerly belonged to the mother of Mrs. Slaughter; but, the mother having been killed by a cyclone some time in March, 1906, Mrs. Slaughter had inherited the property and was sole owner. The record shows that there were various protests entered against the placing of this railway on the avenue by the different owners of the property before the track was placed in the street, so that no question of waiver or estoppel is presented in any way. The narrowness

of the street makes it difficult and almost impossible for a vehicle to be in the street at the same time with the car, and the street is rendered much less available for ordinary traffic since the occupation of the street by the railroad company. The testimony fails to show that Mrs. Slaughter was damaged by any excavations made by the railroad company, and the chancellor so found as a fact. If Mrs. Slaughter is damaged by any excavations, such excavations as produced the damage were made by the city, and not the railway company. But the testimony shows that by the maintenance and operation of this railway the property of Mrs. Slaughter is depreciated in value in a sum variously estimated at from five hundred dollars to twelve hundred and fifty dollars.

All other facts fully stated in the opinion of the court.

*Baskin & Wilbourn,* for appellant.

The writer of this brief wishes to confine this appeal to two questions; first, the excessive damages that were found against the appellant in this case, and, second, the refusal of the chancellor to allow the appellant to remove its railroad track from said avenue and discontinue the running of cars over the said avenue, and the right also to restore the street to its original condition, thus leaving the appellee with an unobstructed avenue so far as the appellant's car line so obstructed it. Or, in other words, to leave it like it was before the construction of the car line in front of her property.

As we have above stated we do not submit any other questions except the above to the court in this appeal. We do not ask for the opinion of the court on any other question, save as to the two questions above suggested, and we shall endeavor to discuss only these two questions and ask for a deliverance of the supreme court alone upon these two questions, that is, whether the damages that were assessed by the chancellor were ex-

cessive, under the facts in the case, or whether the testimony in the case constituted a basis for him to find any damages whatever under the now existing pleadings in said cause, and also express an opinion as to whether the appellant is not entitled to have the amount of damages diminished by the abandonment of what this supreme court has declared to be a nuisance. We submit that the party injured by a nuisance, has the right, if he is willing to take the risk, to abate the nuisance without an appeal to the court. Of course he takes the risk of the courts agreeing with him as to its being a nuisance. This court has declared that the occupancy of the avenue by the appellant is a nuisance, and so the appellee could have, we submit, with safety abated this nuisance by tearing up tracks of appellant and preventing it from running its cars over and along said avenue, and not have brought upon herself any judgment for damages for so doing.

The appellant on the other hand, has a right to abate this nuisance even *pendente lite* and thereby diminish the damages that would be required by it to pay to the appellee.

The error, we submit, that the chancellor made was the refusal to allow the appellant to remove its tracks and abandon its railroad as it prayed to do in its cross bill.

The court below should have granted the appellant this right, and referred the matter of the damages that had accrued from the time of the laying of the track along the avenue and the use of the same up to the time of the trial and to have assessed this amount of damages as against the appellant. But the court below declined to do this, and assessed the damages on the basis that the nuisance of the appellant was a permanent one. The testimony in this record is all grounded upon the idea that the appellant railroad is a permanent nuisance,

contrary, as we submit, to the law, which allows it to be abated as prayed for in the cross-bill of appellant.

If the appellant had the right to abate this nuisance then, as above suggested, the damages found against the appellant with the railroad and track removed, and the avenue restored to its original condition, which the appellant offered to do, is without any testimony to sustain such findings.

We earnestly insist that the thousand dollar damages assessed against the appellant is predicated on the fact that the nuisance created by the appellant was, permanent, when, under the law the court below had no right to enter a decree for a permanent nuisance which the appellant had a right to abate, and which it offered to abate by the removal of its tracks and the abandonment of its railroad, and restoration of the avenue to its original condition.

We further say it was the duty of the court to allow the appellant to diminish the damages by the appellee by abating the nuisance and to have had testimony directed to the damages that appellee had suffered covering the period of occupancy of the appellant on the avenue in front of the appellee's property by appellant's street railway, which constituted as declared by this court a nuisance.

We further submit to the court that there is a distinction between damages flowing from the condemnation of steam railroads and the appellant's street railroad. The former has the right to invoke condemnation proceedings, under the law of eminent domain, and when it invokes this law it pays the damages and obtains title to the property condemned by it and paid for in the way of damages to the owner. There is no authority for the appellant, a mere street railway, to condemn property as it has no power of eminent domain, and, therefore, has no right to obtain title when it pays the owner damages. Bearing this distinction in mind, we insist that

the true rule is that where a court of equity has acquired jurisdiction to enjoin a nuisance and for damages, the fact that the nuisance has been abated voluntarily since the bringing of the action and that since it is not likely to be renewed does not deprive the court of jurisdiction to award damages for the injury already done, and this, we insist is the rule by which the rights of the appellant should have been adjudicated by the lower court.

If it be answered that there was no assurance that this nuisance would not be renewed, we reply that the appellee could have prevented such nuisance, if she so desired *"vi et armis,"* or have had a new suit for a new trespass, or new nuisance on her property, and in addition, if the court following the rule above announced had decreed, as we submit, should have decreed allowing this appellant, while this suit was pending, to abate the nuisance, this decree would have been conclusive on it as all other decrees and judgments are final and conclusive on parties who litigate in the courts.

The street railway, the appellant, not having the power under our law to condemn property has no power to acquire title by the payment of damages, and being thus deprived of such right it surely should have been permitted by the decree of the court to have abated what has been declared to be a nuisance by the supreme court of our state.

We submit the following authorities which, we think, sustain the cross bill of the appellant when it asked to abate the nuisance, and especially in view of the fact that the appellee has prayed for the removal of the appellant's tracks and abandonment of the cars along the front of her property, and we see no reason, where the appellee asked that to be done, and the appellant also joined in the same request, why the court would decline to enter a decree in accordance with the prayer of the original bill of the appellee and the prayer of the cross bill of the appellant. Especially in view of the declara-

tion of our court in this cause that, not only is the avenue absolutely destroyed by appellant's use of the avenue, but that the same constitutes a monopoly of said avenue by the appellant.

The appellant offers to comply with her prayer by abating the nuisance and to submit to a decree assessing damages for the injury that is already done. This, we think, is not only fair, just and equitable, but is in exact accord with the law as it pertains to this proposition.

Appellant says let us have peace; we will take away our nuisance and leave you with your palatial residence unobstructed as it was before the appropriation of any portion of Twelfth avenue that was in front of your property, and pay you whatever damages have been done you up to the time that we abated the nuisance.

We cite the following authorities to show that the court below erred in dismissing the cross bill of appellant in declining to allow it to abate the nuisance complained of by the appellee by the removal of its tracks from the avenue in front of the appellee's property: *Hargreaves* v. *Kimberly,* 26 West Va. 787; *Eli P. Miller et al.* v. *Edison Electric Illuminating Co. of New York,* 184 N. Y. 17; *Foote* v. *Burlington Water Co.,* Supreme Court of Iowa, 62 N. W. Rep. 648; *City of San Antonio* v. *Mackley,* 36 S. W. Rep. 760; *C. & O. Canal Company* v. *Hitchings,* 65 Maine 140; *Adams* v. *Railroad Co.,* 18 Minn. 260; *Thompson* v. *Canal Co.,* 17 N. J. Law 480; *Railroad* v. *Kernodle,* 54 Ind. 314.

The foregoing authorities show that the appellant has in its power at any time to discontinue the grievance complained of, and so long as this power remains it would be unjust to visit it with damages except during the actual time the damage has been sustained. The injury is that which arises from a nuisance which can be abated by the public. The appellant in its cross bill prays to be allowed to abate it, and this legal right has been refused it, thus leaving it to pay appellee for per-

manent damages without getting a title to the street or right to use the same and further exposed to having the municipal authorities to abate the nuisance at any time. The reason for asking that appellant be allowed to abate the nuisance is it needs the decree of the court so to do, otherwise if it undertakes to abate said nuisance, without a decree of court, the municipal authorities have a right to arrest any one of the employes who undertook to remove appellant's tracks from working or digging in the street without permission to do so. As all the people, including the appellee, want the railroad where it is, the appellee wants the railroad and damages—the others want the railroad and do not want it removed—"*Vox populi,*" now says to the municipal authorities, do not allow appellant to dig in the street and the present officials of the municipal authority will obey the voice of the people and prevent appellant from removing its tracks unless the court so decrees.

The appellant had reason to believe that its use of the street for its railroad was not a new servitude upon this Twelfth avenue, whether the street be wide or narrow. Our supreme court says nay, that the use of this Twelfth avenue is a nuisance, and to the announcement of our court, no matter what other courts may say, appellant must abide, and wishes so to do; it filed its cross bill and prayed to be allowed to do so.

In addition to the above we call the court's attention to the briefs filed by Alexander & Alexander and Baskin & Wilbourn, and Miller & Baskin in the original cause when the same was pending upon the first hearing, and upon the suggestion of errors in the argument before this court when the last opinion was delivered by Chief Justice Whitfield.

We herewith submit this cause, asking for a reversal that the lower court may allow appellant to abate the nuisance it created, and allow the court to refer the cause to a master to hear testimony and assess the only dam-

·ages that appellee is entitled to, that is the amount she has suffered up to the time of removal of tracks and restoring the *status quo*.

*G. Q. Hall, Hall & Jacobson,* for appellee.

Counsel manifest solicitude lest this court mistake the purpose of their appeal; and undertake to limit its operation, first, to a consideration of the amount of the damages allowed; and second, to the action of the court in dismissing appellee's cross bill.

The second paragraph, page 5, furnishes a concise statement of their position, to-wit: that the damages allowed are excessive; and that the court refused to allow appellant to remove its track and discontinue the running of its cars and the restoration of the street to its original condition.

And counsel say in the next paragraph: "We do not submit any other question . . . in this appeal."

They seem to complain of appellee for not taking the law into her own hands—to quote: "We submit that the party injured by a nuisance, has the right, if he is willing to take the risk to abate the nuisance." Granted, but law-abiding people prefer to submit their grievances to the courts for redress, rather than assume the hazard incident to taking the law into their own hands. Far better to submit one's grievances to the constituted authorities in the outset, than to be hauled up before the courts at a later date as a criminal or as a bad citizen.

We hardly think that any court would approve of any such conduct as the *vi et armis* method of getting rid of a railroad which had been built and was being operated by permit of the municipal authorities.

Not even after an adjudication favorable to complainant is it allowable to enforce the court's decree otherwise than as provided by law. That appertains to the function of the sheriff's office on proper process.

When this court adjudged that complainant's right as an abutting owner had been reached by defendant's conduct amounting to a nuisance, and remanded the cause for further proceedings, the Chancery court afforded the relief as prayed by special prayers Nos. 2 and 4, to-wit: compensation in damages as afforded adequate redress, rather than the more drastic alternative relief prayed in No. 3, by an abatement of the railroad.

Appellant seems to be aggrieved by the adoption by the court of the milder, rather than the more drastic alternative relief prayed. The complainant (appellee) as usual sought relief in the alternative, to-wit: compensation, or abatement by injunction.

The court responded, that compensation would be allowed rather than destruction of the road; and $1000 was adjudged as proper.

The court did not destroy for reasons satisfactory to itself. Perhaps the interests of the community were considered. But as was its duty defendant was adjudged to make reparation in money, which was the least that the court could do in the premises. It was then up to complainant to accept the results or insist upon something more adequate.

If appellant wants to discontinue its railroad, there is nothing to prevent its doing so. If it wants to "mitigate the damages" by stopping its cars and tearing up its tracks and restoring the street to the *status quo ante* there is nothing in the way of its doing so, for there is no injunction—nothing in the court's decree savoring of any inhibition upon that course if desired.

The error assigned in that regard is the court's action in dismissing appellant's so-called cross bill. That misnamed instrument advised the chancery court that the supreme court had decided against it and had characterized its roads, as built and operated, to be a common law nuisance, and asked the court to order it to abate it.

Neither original bills nor cross bills are maintainable for the purpose of aiding a wrong doer. The court can only redress wrongs at the instance of the party aggrieved.

The function of cross bills is so well understood that we merely cite ch. XLIX, Fletcher Eq. Pl. and Pr., Tit. Cross Bills, and any other text-book on equity procedure.

"The object of a cross bill being to enable defendant to obtain affirmative relief, if the facts alleged in it are nothing more than a defense to the case made by the bill, and, if proved, could afford the defendant no affirmative relief, the cross bill will be obnoxious to a demurrer." Fletcher's Eq. Pl. and Pr., page 950, § 888; *Buckingham v. Wesson,* 54 Miss. 526.

The so-called cross bill is neither an answer, nor a cross bill, nor can it be classed as anything but a confession—a *nil dicit* at law—a *nolle contender* in criminal procedure—a confession of defeat by adjudication at the end of a litigation, with a request that the court, without more ado, will impose damages, and will further grant the severest relief prayed in the original bill. A strange request indeed.

With nothing in bar of complainant's right to relief, because that right had been adjudicated by the highest court in the land, nothing remained to be done except to determine the relief that would award to-wit: abatement and damages, or damages alone, and in that event, the amount thereof, resulting in the milder remedy, and fixing the amount at $1000.

On page 6 of appellant's brief counsel say, "The error, we submit, that the chancellor made was the refusal to allow the appellant to remove its tracks and abandon its railroad as it prayed to do in its cross bill." Where is there anything in the decree denying it that privilege if it saw proper to exercise it?

In the same breath and in the adjoining paragraph counsel say: "The appellant has the right to abate the nuisance even *pendente lite* and thereby diminish the damages that would be required by it to pay to the appellee." We fully concur in this statement. Then why has it not done so?

The chancellor was measurably governed, we assume, by the conditions then presented. Whether the damages were assessed upon the theory that the railroad was there permanently, or whether the court took into consideration the possible contingency of some change in the future is open to conjecture. The one thousand dollars should be regarded as an exceedingly conservative allowance under the facts and circumstances of this case, for thereby such a servitude is imposed for all time—until the crack of doom—until "the wreck of matter and crash of worlds."

Why should appellant undertake to reason upon mere remote possibilities when the matter may be made absolutely certain, and all future contingencies removed by its own act at any time? Should the court indulge the violent presumption that it is not permanent, but only a temporary, evanescent affair?

Appellant cites certain decisions of the courts of other states "to sustain the cross bill of the appellant when it asked to abate the nuisance." And further down on the same page counsel say: "We cite the following authorities (being the same cases) to show that the court below erred in dismissing the cross bill of appellant in declining to allow it to abate the nuisance complained of," etc.

We deny that the court in said decree, either directly or indirectly, placed any inhibition upon appellant's right to "abate the nuisance" if it saw proper to do so.

Not one of the authorities cited touches the proposition which they are intended to support. Not one makes reference to cross bills. In fact, all but two are suits

at law.   Taking them up in the order they are presented
we find:

*Hargreaves* v. *Kimberly*, 26 W. Va. 787, was an action
at law for damages for causing surface water to flow on
plaintiff's lot.   Held that it was entirely competent to
admit testimony as to the damage done to the property
of plaintiff, but it was not competent to admit testimony
as to "the probable damage that will occur in the fu-
ture."   See page 797 of the opinion.   And on page 798
the court quotes from another West Virginia case as
announcing the true rule in that regard, to-wit: "Where
the damage is of a permanent character and affects the
value of the estate a recovery may be had at law for the
entire damages in one action; but when the extent of the
wrong may be apportioned from time to time, separate
actions should be brought to recover the damages sus-
tained" as they accrue.

Again, on page 799 the court says: "Where the cause
of the injury is in its nature permanent and a recovery
for much injury would confer a license on defendant to
continue the cause, the entire damage may be recovered
in one action," but if not permanent, "then the entire
damage cannot be recovered in a single action, but ac-
tions may be maintained from time to time as long as
the cause of the injury continues."

The next case cited is *Miller* v. *Edison Elec. Illumi-
nating Co.*, 184 N. Y. 17, which was a suit in equity to
restrain the continuance of a nuisance and for damages
caused by the maintenance and operation of an electric
light and power plant.   At the date of the trial defend-
ant had discontinued the nuisance.   Held proper to re-
tain the case and determine the amount of the dam-
ages sustained.

A side issue arose as to whether the landlord or the
tenant was entitled to recover, and the court held in favor
of the landlord by the authority of *Kernochon* v. *N. Y.
Elec. R. R. Co.*, 123 N. Y. 559, which the supreme court

held to be inapplicable because an elevated railroad was a permanent structure and intended to be so maintained . . . to the doctrine of which case the court has steadily adhered."

The case of *Forte* v. *Burlington Water Co.* (Iowa), 62 N. W. 648, next cited, was an action for damages for the discharge of smoke and soot from a smoke stack onto plaintiff's residence, which nuisance was discontinued before the date of the trial. Held that damages could not be recovered as for a permanent injury, but only such as were sustained up to the date of its abatement.

The next case is the *City of San Antonio* v. *Mackey*, 36 S. W. 760, which has no sort of application. The city, with others, was using plaintiff's property for a dumping ground for rubbish which was productive of noisome odors abatable by their removal or the action of the elements and therefore not permanent. Says the court: "The measure of damages is the loss of rental value up to the time of the trial and such other accrued special damages as may be shown."

The court then proceeds to state the usual distinction between actions where the injuries are temporary or occurring at intervals, and where the injury is permanent, the court holding that "if the injury is permanent and the injury constantly and regularly recurs then the whole damages may be recovered at once; (and then) in such case the resulting depreciation in the value of the property is the safest measure of compensation." And the court says: "We regard this as a clear statement of the rule on the subject sustained by cases too numerous to be quoted."

The Minnesota case—*Adams* v. *Hastings & Dakota R. Co.*, 18 Minn. 260—is an action at law for damages for building a railroad in a street. The court held to the doctrine that damages accruing to date of trial were recoverable; and that subsequent suits were maintainable

98 Miss.—28

for future damages accruing. This case is at variance with the other cases cited and with the Mississippi decisions.

*Cumberland & Oxford Canal Corp.* v. *Hitchings*, 65 Me. 140, was trespass for filling up two hundred yards of a canal bed. The holding was that the act of the defendant to a nuisance which defendant was "under legal obligation to remove and (that) successive actions may be maintained until he is compelled to do so."

The next case cited of *Thompson* v. *Morris Canal & Banking Co.*, 17 N. J. Law 480, was an action of trespass upon certain acres of plaintiff's land in the work of constructing a canal across certain other of plaintiff's land which (other land) had been condemned and paid for. The jury assessed the damages as eleven thousand, two hundred and ninety-one dollars which added to the value allowed of two thousand, four hundred and twenty-two dollars for the eight acres taken by condemnation proceeding out of a tract of one hundred and sixty acres for which plaintiff had paid five thousand, five hundred and twenty-two dollars, making total damages fifteen thousand dollars, which was held to be shockingly excessive.

That case has no bearing upon the instant case.

*Anderson, etc. Ry. Co.* v. *Kernodle*, 54 Ind. 314, was a bill in equity alleging a taking without assessing and payment of damages, and prays for injunction and a judgment for damages. Demurrer was held to have been properly overruled.

The railroad did not acquire the property by purchase or by condemnation, but simply took possession *in invitum* and proceeded to construct its line of road. The instruction complained of and held to be erroneous told the jury that plaintiff was "entitled to recover the value of the land so appropriated, and any damages that might result to the remaining lands of plaintiff by reason of such appropriation and the construction of the road bed upon the same."

The court held, that as the railroad company would not acquire title by its unlawful taking, the value of the land was not the true measure of the damages.

We have patiently waded through this line of decisions to show how unsupportive they are of appellant's contention. But why wander around over the different states of the American Union and hunt up a lot of variant decisions upon the measure of damages in different states of case, when our Mississippi reports furnish a multitude of harmonious decisions in point; and when we have a Constitution which inhibits the taking or damaging of private property for public use except upon due compensation to the owner or owners first made. Out of a multitude we cite the following: *Theobold* v. *Ry. Co.,* 63 Miss. 279; *Stowers* v. *Postal Tel. Co.,* 68 Miss. 563; *Railroad Co.* v. *Bloom,* 71 Miss. 252; *Vicksburg* v. *Herman,* 72 Miss. 211; *Railroad Co.* v. *Lefoldt,* 87 Miss. 317; *Railroad Co.* v. *Smith,* 90 Miss. 44; *Brahan* v. *Tel. ephone Co.,* 52 So. R. 455; *Thompson* v. *Winona,* 51 So. 129.

Sifted to its last analysis counsel's contention, as disclosed by their brief, is simply this: We now confess to the commissioner of a wrong upon appellee's rights amounting to a public nuisance, and for which we further confess she is entitled to be adequately compensated, but the amount of compensation which the court has allowed may be excessive since it is possible that appellant may at some indefinite future date see proper to abandon its railroad in front of her property and that possibility should be considered in mitigation of damages. "Sufficient unto the day is the evil thereof."

ANDERSON, J., delivered the opinion of the court.

This is the second time this case has been before this court. On the former appeal it will be found reported in 48 S. R. 6; and again, in 48 S. R. 1040, 95 Miss. 251, the latter opinion being in response to a suggestion of error, which was sustained to the extent that the reversal

was put on a different ground from that of the first opinion. It was first held that, under section 17 of the Constitution, providing that private property shall not be taken or damaged for public use except on compensation being first made, the street railway company was an additional burden on the street, and for which an abutting owner was entitled to additional damages; and in response to the suggestion of error it was held (Quoting the syllabus, which clearly states the holdings of the court) :

"A street railway company, constructing and operating a street railway in the center of a twenty-three foot roadway of the street, and thereby leaving but two inches of space between the body of the cars and the hubs of an ·ordinary standard wagon, destroys the use of the street for all purposes excepting the use for cars, and seriously interferes with the ingress to and egress from abutting property; and one owning substantially a block abutting on the street may recover the special damages sustained, though it be assumed that a street railway in a street does not impose an additional servitude."

The ·facts of the case when here on the former appeal will be found clearly and fully stated in the two opinions of the court above referred to. It is deemed necessary to add thereto only paragraph 3 of the prayer to the original bill:

"That if it be found that the said excavation of said avenue and the construction and maintenance of said track therein, and the operation of its cars thereon have the effect to destroy the approaches to the premises of your oratrix, and of ready and easy means of ingress and egress from said avenue through said alley, and if it be found that the use of said street for travel and for the usual and ordinary purposes to which the public, and to which your oratrix, as part of the public, and as an abutting owner, is legally entitled to devote to the public thoroughfare, are obstructed and impaired, then that defendant be perpetually restrained from its said appro-

priation and monopoly of said street, and that the defend-
ant, by mandatory injunction, or other proper order, be
required to remove its said tracks from said avenue or
from so much thereof as abuts the said property of your
oratrix, and restore the said avenue to the grade and
condition thereof next preceding the date of construction
of its said track and of making excavation thereof for
the purpose thereof.''

. On being reversed and remanded, the appellants, by
leave of court, filed an amendment to its answer to the
original bill in which was stated the result of the litiga-
tion up to that time, and containing this paragraph:

''The defendant shows to the court, in accordance with
the prayer of the original bill in this cause, and since the
supreme court has declared its railway a nuisance, it, the
said defendant, now joins in said prayer, or so much
thereof as prays that this defendant may remove its track
from Twelfth avenue in front of said complainant's
property and abandon the running of cars over and along
said track which traverses Twelfth avenue, defendant
averring it was not its intention to place a nuisance on
the said avenue at the time it laid its track and begun to
run its cars thereon.''

And setting up further that the appellee was not dam-
aged by the maintenance and operation of the street rail-
way along the avenue on which her property abutted.
This amendment to the answer was made a cross bill;
the material allegations of which were denied by the ap-
pellee. On the trial appellant introduced testimony tend-
ing to establish that the property of the appellee was not
damaged by the use of the street by appellant, but rather
enhanced in value. The appellee introduced testimony,
all of which was directed to the question of permanent
damage to her property by the continued maintenance
and operation of the street railway by appellant. There
was a decree for appellee for one thousand dollars for
permanent injury to her property. The prayer of the
bill joined in by appellant, in its answer and cross bill,

is disregarded by the decree. From this decree appellant appeals.

The contention of appellant is that the court erred in decreeing damages for permanent injury to appellee's property; that instead, a decree should have been rendered abating the nuisance, and enjoining its further maintenance, and awarding damages alone for the injury done up to the time of such decree.

The citation of authorities is deemed unnecessary to sustain the proposition that a party maintaining a nuisance to the damage of the real property of another may voluntarily abate such nuisance, and thereby avoid liability for permanent injury to such property. The prayer of appellee's bill is that if the court should find that the continued maintenance of the nuisance by appellant would destroy the "ready and easy" ingress and egress to and from her property; and that the use of the avenue for the ordinary travel would be impaired, a decree be rendered abating such nuisance and enjoining appellant from its further maintenance; in which prayer appellant joined in its amended answer and cross bill. That is exactly what this court held to be the facts, and in addition, that its maintenance destroyed the use of the street for all purposes except that of appellant's cars. *Slaughter* v. *Meridian Light & Ry. Co.,* 48 S. R. 1040, 25 L. R. A. 1265 (N. S.). May not the appellant ask the court to decree that to be done which appellant could have done voluntarily before suit? And especially if the granting of such prayer is equivalent to confessing the allegations of appellee's bill, and joining in the prayer thereof? Why should appellant be made to pay damages for permanent injury to appellee's property, when it is willing and anxious to desist from further injury? Our judgment is that the contention of appellant is eminently just.

The court should have granted the prayer of appellee's bill so joined in by appellant. The decree should have

been for the abatement of the nuisance, and enjoining its further maintenance and operation, and awarding the appellee damages for injury to her property up to the time of such decree.          *Reversed and remanded.*