# CASES ARGUED AND DETERMINED

## IN THE

# SUPREME COURT OF MISSISSIPPI

## AT THE

## MARCH TERM, 1915.

---

WILLIAMS ET AL. *v.* MERIDIAN LIGHT & RY. CO. ET AL.

[69 South, 596.]

1. PLEADING. *Objections. Ruling on demurrer. Amendments. Street railroads. Public nuisance. Abatement. Special damages. Eminent domain. Compensation. Additional servitude. Actual damages.*

On an appeal from a judgment sustaining a demurrer to a bill only the bill and the last amendment thereto will be considered, since all questions eliminated from the bill by the various amendments thereto are waived, although such amendments were made in order to meet the rulings of the court in response to demurrers.

2. STREET RAILROADS. *Public nuisance. Abatement. Special damage.*

The laying of an additional track in a street does not constitute a public nuisance, from which abutting property owners sustain such special damage as will entitle them to the abatement thereof.

3. EMINENT DOMAIN. *Compensation. Additional servitude.*

The laying of a second track in the streets by a street railway does not impose an additional servitude upon a street for which the abutting property owners are entitled to compensation.

4. EMINENT DOMAIN. *Compensation. Actual damages.*

Under section 17, Constitution 1890, a street railway company is without power to construct or to operate a street railway in the streets of a municipality until compensation has first been made to the abutting property owners for any actual damages which will result to them therefrom, and an injunction will lie to prevent it from so doing.

(174)

APPEAL from the chancery court of Lauderdale county. HON. SAM WHITMAN, JR., Chancellor.

Suit by F. W. Williams and others against the Meridian Light & Railway Company and others. From a judgment sustaining a demurrer to the bill of complaint, complainant appeals.

In March, 1912, appellants filed a bill in chancery, alleging that they are the abutting owners on Eighth street, the most popular and populous residence street in the city of Meridian; that said street is thirty-six feet wide between the curbs, and that the defendant street railway company operated a single track in the middle of the street for a number of years; and that said street railway company was desirous of laying a double track for a number of blocks along said street in front of the property owned by the complainants, who protested to the city authorities and to the street railway company against the double-tracking of said street, claiming that it would result in serious damage to their property, as well as subject them to great inconvenience. The bill alleges that with a single track on said street there is a space of thirteen feet on each side, between the cars and the curb, whereas with the double track there would be only eight and one-half feet on each side of the street, and that as a result of said double-tracking vehicles could not pass each other between the cars and the curb, horse-drawn vehicles could not be left standing near the curb, and aside from the fact that the car tracks would take up a large part of the street, complainants were greatly damaged and inconvenienced by the laying of said tracks, and by the digging up of said street, and the noise incident thereto, said work having been carried on both night and day; and since the double-tracking of said street larger cars ran on a five minute schedule, instead of every fifteen minutes, and made a great deal of noise, damaged complainants' property and complainants claim protection of section 17 of the Constitution of the state, which provide that:

"Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be pre-scribed by law.'

The bill alleges that in October, 1910, the trus-tee in the mortgage securing the bonds of said street rail-way company had filed a bill against the street railway company, the city, and the complainants, and others, to restrain any interference to the construction of this double track which the street railway company desired to lay, and obtained an injunction, and under this injunc-tion, that the street railway company had entered upon said street, dug it up, graded it, and proceeded to lay the double track in defiance of the rights of the abutting owners, and that said injunction was finally made per-petual by the federal court, and thereafter an appeal was prosecuted to the United States circuit court of ap-peals, and the decree of the lower court was reversed, the court holding that the United States district court had not jurisdiction and dismissing the bill, but in the meantime, under the protection of this federal injunction and before the case was reversed by the court of appeals, the double track had been laid; that the taking possession of the street in the manner described, and appropriating the same to the use of the street railway company, and laying the double tracks were willful, deliberate, and premeditated acts of trespass, in defiance of the rights of the abutting property owners. The bill further alleges that complainants have been subjected to great damage to their property, and besides have been forced to incur large expenses in attorney's fees, court costs, and ex-penses incident in contesting the various suits from this action by the street railway company.

The bill prays that the double tracks be declared to be a nuisance, and abated as such, and that the defendants be required to remove same and place the single track back in the street, and that complainants be awarded such damages as they have sustained, and that defendants be

restrained from using or operating said double tracks until all damages which may have been adjudicated shall have been paid. There was a demurrer to the bill as finally amended, which was sustained, and this appeal is taken.

*Green & Green,* for appellants.

In the suggestion of error, the counsel does not seem to understand the opinion of the court. The opinion answers the first two questions, namely: First, "Is the laying of the additional track in the street in question a public nuisance from which abutting property owners sustained such special damages as will entitle them to the abatement thereof?" Second, Does the laying of this second track impose an additional servitude upon the street; or, in its last analysis, does a street railway impose an additional servitude upon a street for which the abutting property owners are entitled to compensation?" The court holding:

"It seems to be settled by the great weight of authority that the first two of these questions must be answered in the negative in so far as they are governed by common-law principles alone."

The court then proceeds to interpret section 17 of the Constitution and the right of abutting property owners and holds that under section 17 of the Constitution, abutting property owners are entitled to damages incurred.

It is the change that section 17 has made in the common-law rule that is the predicate of the complainant's claim here. The court's questions are:

"(1). Under section 17 of the Constitution as applied to the case at bar in our former opinion can a street railway company be enjoined from laying or maintaining its tracks in the street of a municipality without first compensating the abutting property owners for any damage thereby inflicted upon them; and

"(2). Is this question presented by the pleadings?"

Answering both of these questions presented by the pleadings, is the right of an abutting owner to have the laying or maintenance of the tracks enjoined until and unless compensation is first made. The pleadings do not claim any decree for the amount of the damages, but confine the exercise of this jurisdiction to their right to the injunction until compensation is first made.

The chancery court, would not have the jurisdiction to exercise the power of eminent domain. This power is confided to a special tribunal created by statute and which has power only to ascertain the amount of damages. Resort must be had to the chancery court for an injunction against the right to exercise eminent domain to condemn, and the chancery court must, before, and even after, the amount of damages has been ascertained in eminent domain proceedings, declare whether the right to exercise eminent domain proceedings in the corporation actually exists.

In *Lumber Company* v. *The Railroad,* 89 Miss. 84, it was held that the special court of eminent domain was only organized to determine the amount of damages and has no jurisdiction to determine the question of the right of the plaintiff to condemn the land, and there it was held that it was proper to enjoin the proceedings in condemnation until the right to condemn was ascertained. The court says, page 113:

"Since neither the constitution nor the statutes provide a particular tribunal in which to try the question of whether or not the use for which private property is to be taken is a public or private use, and since it is made a judicial question by the constitution, when it is sought to try the question, it must be by injunction, and in the chancery court, enjoining the entry upon or appropriation of the land, because the use for which land is sought to be taken is not a public use."

It is beyond the power of the Legislature, much less a municipality, under section 17 to permit the property of the abutting owner to be damaged without compensation

first made, and injunction, either before or after the injury is done, is the proper remedy until and unless the corporation shall resort to eminent domain proceedings to ascertain the amount of damage and to pay that damage before the injury can be inflicted. *Thompson* v. *Grand Gulf Railroad Company,* 3 How. (Miss.) 240; *Stewart* v. *Raymond R. R. Co.,* 7 Sm. & M. 568; *Railroad Company* v. *LeBlanc,* 74 Miss. 650, 674.

Here the case is on demurrer to this court, and this court has overruled the demurrer and upon remand, if it shall appear that complainants are entitled to the relief prayed—if the facts charged in the bill are true—then under this rule, it would be the duty of the chancellor to grant the injunction as prayed, but to stay the enforcement of the injunction until the railroad company could have an opportunity to institute eminent domain proceedings to ascertain the amount of damages which had been sustained, and which must, first, be paid by it, before it could lawfully occupy the street. The rule of *Thompson* v. *Grand Gulf Railroad & Banking Company,* 3 How. (Miss) *supra,* has been followed in a number of cases. *Pearson* v. *Johnson,* 54 Miss. 263; *Laurel* v. *Rowell,* 84, Miss. 435; *Board of Supervisors* v. *Lumber Company,* 103 Miss. 324; *Levee Commissioners* v. *Dancy,* 65 Miss. 341.

The result is, that the chancery court has jurisdiction to grant this injunction, and should do so; and, as stated, in granting it require that the Railroad Company should institute eminent domain proceedings to ascertain the amount of damages done to the abutting property owners, and when this is ascertained and paid, then the decree for quiet enjoyment, as was the rule in 7 Sm. & M., *supra,* should be made.

It is immaterial that under the direction of the chancellor, suits at law were brought by the abutting owners to ascertain the damages, for these suits by the property owners are improper methods of deciding the amount of damages, and cannot affect the right of injunction in

equity to define the nature and extent of the use (84 Miss. *supra*,) and then to restrain until the damages are ascertained and paid.

This should be done by the railroad impetrating eminent domain proceedings under the special remedy provided by the Code, and, as held in cases, *supra*, the property owner is not required to do anything to assert his right to damages and cannot lose it by inaction or nonaction.

In the *King case,* 88 Miss. 456, there was an action at law for the damages. That case did not involve the jurisdiction in equity by injunction to restrain the exercise of the public use until compensation is first ascertained and paid.

The *Slaughter case,* 91 Miss. 251, was for injunction and damages. Here under the demurrer of appellee the chancellor has dismissed the bill as to the damages, and it stands squarely upon the right of injunction until compensation shall be first made, as held in 7 S. & M., *supra.*

Therefore, the decree, as heretofore rendered in this court, should stand.

*G. Q. Hall & Jacobson,* for appellants.

Without regard to whether a car line laid and operated in the street constitutes an additional servitude, the taking, destruction or impairment of the easement of ingress and egress, or of other rights appurtenant to abutting property, constitutes an actionable wrong, preventable by injunction, and abatable at the suit of the abutting property owner.

This was expressly and conclusively settled as the law in this state, in a similar controversy between Mrs. Mackie Slaughter against this identical company (95 Miss. 251, 98 Miss. 420), where one line of track was built in Twelfth avenue, so as to render Mrs. Slaughter's premises abutting thereon inaccessible, save with diffi-

culty and danger, and so as to interfere with the passage of vehicles along said street when cars were passing.

Now, a nuisance is defined to be: "Anything that unlawfully worketh hurt, inconvenience or damage." 3 Bl. Com. 216.

"That class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his own property, either real or personal, or from his improper, indecent, or unlawful contract, working an obstruction of, or injury to the right of another, or of the public, and producing such material annoyance, or inconvenience, discomfort or hurt, that the law will presume a consequent damage. Wood on Nuisance; sec. 1. See Black's Law Dictionary, "Nuisance."

The Blackstone definition is said by Judge COOLEY (Cooley on Torts, p. 565) to embrace not a mere physical injury to the property, but any injury to the owner or possessor as respects his dealing with, possessing or injuring it. Interference with the public and common rights creating a public nuisance, when accompanied with special damages to the owner of the land, also gives a right of private action. The public nuisance as to the person who is specially injured thereby in the enjoyment or value of his lands, becomes a private nuisance also. Cinders, ashes, dust, fumes, noise, obstructions of access and vibrations, produced by another, are actionable as nuisance, 29 Cyc. 1184, 1190. *King* v. *Railway Co.*, 88 Miss. 456; *L. N. Terminal Co.* v. *Lellyett*, 1 L. R. A. (N. S.) 49; *Rainey* v. *Red River, etc. R. R. Co.*, 89 S. W. 768.

The constitutional restrictions prevent the legislature from surrendering or giving away the property rights of private citizens. Its power of eminent domain, may in case of public necessity, compel the citizens to submit to the continuance of the business, and exchange his property for money, but the legislature cannot deprive him of that. In every case, the inquiry primarily is: Has a legal right which forms part of the value of the injured

property been infringed? Sec. 17 of the Constitution, denies legislative power to fix theuse as public, and makes it a judicial question.

The fact that it has the legislature's permission to permit the act will not deprive the property owner of the right of money compensation.

But this court has held in the *Slaughter case, supra,* that this is subject to the limitation that private rights cannot be thereby impaired with impunity, and that the laying and operation of its lines, so as to unduly interfere with the use of the street for the ordinary purposes of travel, and the undue interference with the abutting property owners' use and enjoyment of their own, constituted a nuisance, abatable at his instance, and entitled him as well to due compensation in damages.

In Cyc. 29, 1214, the remedies against nuisance are set out to be: First, right to abate without legal process; second, suit in chancery for abatement of or injunction against; third, action at law for damages; fourth, criminal prosecution against the person maintaining it. On page 1215 it is said that an individual may, by his own act, abate a public nuisance causing him special injury.

Equity relieves whether the nuisance be public or privvate. Such proceedings for relief against a private nuisance should be brought in the name of the party injured; and one specially injured by a public nuisance is entitled to sue for relief in his own name, or if there are others similarly affected, all or any may join. 29 Cyc. 1237, 1238, 1257, 1261. See, also, Ib., 1219, 1234.

The chancery court should, in granting relief against a nuisance, award plaintiff damages for the injuries sustained during its continuance. 29 Cyc. 1251 and 1254. (98 Miss. 420)

Street Car Line, Whether an Additional Burden.

Does a street car line, operated by electricity, constitute an additional burden on the street? This court, on the 18th of January, 1909, in an unanswerable opinion

by Judge MAYES, responds in the affirmative. *Slaughter*
v. *Meridian Light & Railway Co.*, 95 Miss. 251.

The easement of ingress and egress of the property
owners in the street and his rights to the use of such
street in connection with his property, is held to be prop-
erty. 1 Am. & Eng. Ency. Pl. & Pr. 218; *Hart* v. *Buckner*,
54 Neb. 219; *Mullker* v. *N. Y. & H. R. R. Co.*, 197 U. S.,
544; *Chicago* v. *Taylor*, 125 U. S. 161; *Vicksburg* v. *Har-
mon*, 72 Miss. 211; *Raney* v. *Hinds County*, 78 Miss. 271.

In the *Theobold case*, 66 Miss. 279, decided before the
adoption of the Constitution of 1890, the court said: "A
street is a public thoroughfare or highway, established
for the accommodation of the public generally, in pass-
ing from place to place, and for such other incidental
uses as are ordinarily made of public streets, such as
laying drains, sewers, gas, and water pipes and the like.
Public streets are for the use and benefit of all and no
one has any exclusive rights and privileges therein.
They are free to all upon like conditions, and subject to
use by any means of locomotion which is not destructive
of the common uses and ordinary methods of travel. If
this is true, a railroad does not fall within the purpose
for which public streets were originally established, and
the occupation of a public street by a railroad is an ad-
ditional servitude on the land, and a perversion of the
street from its original purposes.

The introduction of a new motive power, would not,
perhaps, be material; but a railroad requires a perma-
nent structure in the street, the use of which is private
and exclusive. It confers upon an individual or corpo-
ration, rights and privileges in the streets, which are in-
compatible with those of the public and adjacent proprie-
tors. To hold that a railroad is one of the legitimate uses
of a public street, leads to the inconsistency that the
street may be monopolized by a corporation or an indi-
vidual and filled with parallel tracks which would practi-
cally exclude all ordinary travel and still be said to be
devoted to the ordinary uses of a public street. "Lewis

on Eminent Domain, sec. 111; I Hare Const. Law, 362."

The Bloom case was brought to this court after the change in the organic law of this state. The Alabama & Vicksburg Railway Company, under a license from the municipality of Jackson, constructed a track along the public streets, without making compensation for any consequent damages to abutting property owners.

Says the court, quoting from the syllabus: "Railroad companies cannot escape liability under sec. 17, Constitution 1890, merely because the damages to such abutting owners are only such as necessarily and naturally arise from the proper management and conduct of its trains on said track."

Again it says: "If the construction and maintenance of the switch and the uses to which it is devoted by defendant, render the ordinary use and occupation of the property physically uncomfortable to plaintiff, he is entitled to recover such damages as will compensate for the consequent discomfort and inconvenience, if any, he has suffered in the enjoyment of his property. "*Peck* v. *Schenectady R. Co.*, 170 N. Y. 278; 3 Abbott, Municipal Corporations, sec. 845, where the opinion by Judge Miller is extensively quoted from *Detroit Ry. Co.* v. *Mills*, 85 Mich. 634.

It follows from the enunciations in the three several opinions in said cause: That whether the building of a street car line in a street gives a right of action to the abutters, is not dependent upon whether or not, as an abstract proposition, it constitutes an additional burden on the street. Whether it does or not, is immaterial to the rights of the abutter, to recover any damages sustained by him, by reason of its location and operation therein, and to have it abated as a nuisance.

The right of street use for street car purposes is at most a qualified one.

Says Mr. Abbott: "The abutting owner, irrespective of his interest in the adjoining highway is entitled to compensation of that highway by a surface street railway

when that use interferes with or destroys the easement, which as possessor as an abutting owner in the access to his property, and to air and light. These easements are property rights, and when an unauthorized use of a highway impairs or destroys them, then compensation can be recovered." 3 Abbott, Municipal Corp., sec. 5847; 2 Lb. 820.

The rights of a street railway company to the use of a street is a qualified one and subject to the implied condition, that the highway shall not be used in such manner to destroy its proper and legitimate use by the public at all times.

3 Abbott Municipal Corp., p. 2017, sec. 851, note 778; *McQuaid* v. *Portland etc. R. Co.*, 18 Or. 237; *Pennsylvania R. Co.* v. *Walsh*, 1 Pa. Dist. 121; *Campbell* v. *Metropolitan Ry. Co.*, 82 Ga. 320; *Dooly* v. *Salt Lake, City, etc., Co.*, 9 Utah. 31, 24 L. R. A. 610; *Campbell* v. *Metropolitan Street R. Co.*, 28 Ga. 320; *Elizabethtown, etc., R. Co.* v. *Combs*, 10 Bush. 392, 19 Am. Rep. 67; *Cincinnati, etc., Ry. Co.,* v. *Cumminsville*, 14 Ohio St. 523; *Cincinnati, etc., Ry. Co.,* v. *Cumminsville*, 14 Ohio St. 523; *Dooly* v. *Salt Lake etc. R. Co.*, 9 Utah 31, 24 L. R. A. 610.

By way of summoning up in conclusion, we submit: (1) That the true rule which should be adopted in this state is that announced and contended for in the Mays opinion in the Slaughter case (a) That was subscribed to by the unanimous court. (b) It has never been held by this court to be unsound, but only as unnecessary for decision. (2) Under the familiar principles that one must use his own or exercise a right so as not to inflict an injury on another.

*Baskin & Wilbourn,* for appellee.

The question propounded by the court on the suggestion of error, filed by the counsel for appellee, are these: "(1) Under section 17 of the Constitution, as applied to the case at bar in our former opinion, can a street rail-

way company be enjoined from laying or maintaining its tracks in the streets of a municipality without first compensating the abutting property owners for any damages thereby inflicted upon them.'' and,'' (2)   Is this question presented by the pleadings?

It is manifest from the record that the appellants have stricken from the amended bill the prayer for the allowance of damages and, to use the language of the pleader, they ''have proceeded to the redress of their several and respective wrongs in that regard by separate suits in the honorable circuit court of Lauderdale county.''

Necessarily, therefore, all questions as to the fact of damages and the amount to be recovered therefor, and the recovery and collection of said damages, were eliminated from this present suit, and the appellants elected to pursue their remedies in respect thereto in the circuit court of Lauderdale county, Mississippi.

It is not disputed that that court has jurisdiction of such suits.  It cannot be contended that if any legal damages have been sustained they are not cognizable by the circuit court of Lauderdale county, Mississippi, and recoverable there, if at all.

The court, in the opinion formerly handed down in this case, has held, though we think it was unnecessary to pass on the question at all, and it was not really involved, that they could recover such damages as they might actually show that they had really sustained by reason of the fact of the laying of a double track in eighth street.

Since the tracks are not an additional servitude upon the street, as held by this court, and since their presence in the said street does not amount to a nuisance, and since the laying of street car tracks in a street is a legitimate use of such street, the only possible sort of actual damage that appellants would be entitled to, if they were entitled to any, would be, nominal damages, if any at all.

When a party claims that the making of a public improvement in a street or highway results in consequential damages to adjoining property, it certainly must be

conceded that the party whom it is claimed has caused such consequential damages would have the right to. deny that any such consequential damages, had resulted from the act complained of.

And where the party claiming such consequential damages has invoked the judgment of another court to determine whether or not such consequential damages have been sustained, and to ascertain the amount of them, this court, which is not asked to assess any damages, and is notified by the pleadings that another court has been applied to for redress in that regard, ought to leave the question of damages alone to be settled between the parties by the court whose jurisdiction these appellants have already invoked.

In other words, these appellants notified this court, and the court below, through their pleadings, that they have gone into another forum to have the issue of damages *vel non* determined and amount of damages, if any, assessed. And when this court is so advised, we submit, it not only should not, but cannot make any order with reference to those damages.

Counsel for appellants, in their brief, contended an injunction against the appellee, restraining it from maintaining its tracks in the streets of the municipality, until it first compensates owners for damages thereby inflicted upon them, should be granted, and the street railway should be required to institute eminent domain proceedings to ascertain the amount of damages done to the abutting property owners.

We submit the court, not only should not, but cannot render any such decree, for several very sufficient reasons, as it seems to us.

In the first place, the Meridian Light and Railway Company, nor any other street car company for that matter, has any right of eminent domain under the laws of Mississippi, as to any municipal street.

Indeed we submit that it was never regarded as necessary to confer the right of eminent domain upon a street

railway as to the streets, alleys, avenues and lanes of a city, because the laying of such tracks in such streets, alleys, avenues and lanes of a city was recognized as a legitimate use of the same, and as not being an additional servitude, and because it was thought and considered that a municipality should regulate and control street railways in its streets just like they would regulate hack lines, omnibuses, and other means of locomotion over and along the streets.

In Lewis on Eminent Domain, section 161, the view of this court as announced in the opinion in the case at bar, is laid down by the author as meeting with the very unanimous concurrence of the courts of the land. And, as we construe the court's opnion, it aligns itself with the practically unanimous voice of the courts of the United States. But since the Constitution of 1890, the court now holds, simply that he may recover any actual damage sustained, even though it result from a legitimate and public use of the street.

But there must still be an actual and legal damage done to the property, and the party whom it is claimed did the damage, is not denied the right to controvert the fact of damage as well as its amount; and where, as the appellants have done in this case, the party claiming to have been aggrieved proceeds in a proper forum for the recovery of his damages, parties there litigant should be allowed to try out the issue as to damages *vel non* in the forum that the aggrieved party has chosen to submit his claims to. *Thompson v. Grand Gulf Railroad & Banking Company*, 3 Howard 240.

It cannot be said in this case, the case at bar, that an action at law would give no adequate relief. It is not contended that the appellee is insolvent. It cannot be said that no compensation can be had at law for any actual damages, if any have been sustained.

The very fact that the appellants have asked a court of law to award them damages, shows that damages may

be recovered, if shown to exist in such proceeding, according to the view of appellants themselves.

Nor can it be said in this case that the nature of the injury complained of is such that a preventive remedy is indispensable. In the case at bar, the court knows from the record that the parties are litigating over the fact of damages *vel non* in another court.

In the case of *Board of Supervisors* v. *Railroad,* 103 Miss. 324, cited by counsel for appellant, it is held "while ordinarily the complainant is required to establish the fact of injury by an action at law, before a court of equity will interfere, yet where the injury is manifest, the right clear, and the nuisance a continued one, or constantly recurring, and satisfaction can only be had by repeated suits at law, a court of equity is the proper tribunal to relieve." *Lerned* v. *Hunt,* 63 Miss. 373.

It cannot be said in the case at bar that the injury claimed to result from the laying of the track in Eighth street is manifest, nor that relief in the matter is clear. Many of the conditions complained of by the appellants in Eighth street as result of laying the double track, are matters which the *Smyer case* in 61 So. 358, which this court has approved, holds are not proper elements of damage.

With the claims for damages stricken out by the appellants in this case, this court cannot say, or hold, or find what sort of damages if any, we submit, should be recovered, and we submit this court ought not to pass, in this case, on any question involving the question of damages which the appellants have eliminated from this case, and which the appellants in this case have notified the court they are litigating in another forum.

In a condemnation proceeding, as we understand the effect of the decision of this court, in *Railroad* v. *Lumber Company,* 89 Miss. 84, the only issue involved is the issue as to the amount of damages. Not the fact of damages *vel non;* not the issue as to the right to take the property; not the issue as to whether or not the use is a pub-

lic one; but solely and alone an issue as to amount of damages.

We must submit that this is peculiarly a case, where before the jurisdiction of equity to restrain can be invoked, appellants must establish the fact of damages and the amount thereof in a proceeding at law, which is the very thing they are undertaking to do and that any effort, if the question were in this record, to invoke such injunctive relief as restraining operation of cars until the damages should be first assessed and paid, is premature.

There is no case cited by our friends for the appellants, holding that under the facts of this record such injunction as they ask in their brief, in response to the inquiry of the court upon the suggestion of error could be granted.

The case of *Railroad* v. *LeBlanche,* 74 Miss. 650, is totally unlike the case at bar. That case involved the title of a right-of-way of a railway, which the supreme court held was not good. Under no conceivable theory under the attitude of this record, as we see it, could the chancery court on remand of this suit, grant any injunction against the operation of the street cars over the double tracks on Eighth street. And this court has expressly held already that they would not be abated as a public nuisance. The case of *Pearson* v. *Johnson,* 54 Miss. 264, has, as we submit, no application to the facts in the case at bar. The case of *Laurel* v. *Rowell,* 84 Miss. 435, is not applicable to the case at bar.

It appears that in the case of *Leflore County* v. *Cannon,* 81 Miss. 334, Judge CALHOUN was careful to state not only that the board of supervisors was about to dam up the stream but that in doing so irreparable injury would have been inflicted. After making these statements, then follows the second portion of the quotation found on page 7 of the brief of the counsel for appellant. That second quotation on page 7 of the counsel's brief while a quotation from 103 Miss. 342, is in fact taken from Judge

Calhoun's opinion in the case of *Leflore* v. *Cannon*, 81 Miss. 334.

The first paragraph quoted from *Board of Supervisors* v. *Lumber Co.*, 103 Miss. 340, comes after Judge REED's announcement that it is settled in this state "that the chancery court has jurisdiction to grant an injunction to restrain a person from damming a bayou, or other natural outlet or stream, where the injury resulting from such obstruction is manifest and continuous, or constantly recurring and the right of relief in the matter is clear."

It will also be noted that Judge REED says at the bottom of page 340, 103 Miss., as follows: "It cannot be said that the board of supervisors are proceeding in this case under the right of eminent domain. Nothing has been done looking to the ascertaining and paying to the appellees the amount of compensation to which they would be entitled, which is required by section 17 of the Constitution. And it cannot be said that the appellees have not shown such individual and special damages arising from the construction of the levee as to give them the right to proceed to abate what might be claimed to be a public nuisance." The case of *Levee Commissioners* v. *Dancy*, 65 Miss. 341, has no application, we submit, to the facts of this record.

In the case of *Birmingham Street Railway Co.* v. *Smyer*, 61 Miss. 358, approved by this court, it is pointed out in the statement of the case by the judge who handed down the decision that Alabama has a constitutional provision substantially the same as ours.

That constitutional provision provides for compensation for property taken, injured or destroyed; and that such compensation shall be paid before the taking, injury or destruction of such property; and the court held, in *Birmingham Railway, Light & Power Co.* v. *Smyer*, *supra*, that the complainant Smyer was not entitled to any injunctive relief.

In *Pearman* v. *Wiggins*, 103 Miss. 4, and especially at page 12, Justice REED, quoting from *Green* v. *Lake*, 54

Miss. 540, says: "The complainant must sustain a special or peculiar damage, an injury distinct from that done to the public at large. Irreparable injury lies at the foundation of relief in equity, which must be so great as to be incapable of compensation in damages."

Not to protract this brief any further, we submit, in the first place that the question propounded by the court on the suggestion of error, is not presented in this record; and, in the second place, if it were under the facts of this record and the decisions of our court and the rules governing the granting of injunctive relief and the decision of the court in the particular case at bar, no injunction could properly be granted against the operation of the cars upon the double tracks in Eighth street; and that there is no injunctive relief to which the appellants are, or would be entitled; and that the question of damages is not involved in this record; and that instead of this case being reversed and remanded, as result of the court's decision, it should be affirmed without prejudice to the pending suits of the appellants for the recovery of damages; and also without prejudice to the right of defense to such suits as the appellee may have.

SMITH, C. J., delivered the opinion of the court.

The case presented to us for decision is that made by the bill and the last amendment thereto, for all questions eliminated from the bill by the various amendments thereto are waived although such amendments were made in order to meet the rulings of the court in response to demurrers (31 Cyc. 465; *Brasfield v. French*, 59 Miss. 632), so that no question raised in the court below by any of appellee's various demurrers, other than the last, will be here considered. Three of the remaining questions referred to in the brief of counsel for appellant are not raised by the allegations of either the original or amended bill, and therfore are not presented to us for decision. These are: First, that the city of Meridian is without

power to grant a street railway franchise; second, conceding that the city has this power, that the ordinance by which the franchise in question was granted is void; and, third, that the charter of incorporation of appellee, the Meridian Light & Railway Company is void.

The only questions raised by the pleadings, as we understand the record, are: First, is the laying of the additional track in the street in question a public nuisance, from which abutting property owners sustain such special damage as will entitle them to the abatement thereof? Second, does the laying of this second track impose an additional servitude upon the street; or, in its last analysis does a street railway impose an additional servitude upon a street for which the abutting property owners are entitled to compensation? Third, should both of these questions be answered in the negative, in event actual damage results to the abutting property owners by reason of the laying of this second track, are they entitled to compensation therefor under section 17 of the Constitution?

It seems to be settled by the great weight of authority that the first two of these questions must be answered in the negative, in so far as they are governed by common-law principles alone. The case of *Slaughter* v. *Railway Co.*, 95 Miss. 251, 48 So. 6, 1040, 25 L. R. A. (N. S.) 1265, and 98 Miss. 420, 53 So. 952, is not in conflict with this view, for in that case the street involved was so narrow that the use by a street railway company of even a single track therein practically excluded all others from using the street at all. A very good discussion of the relative rights of a street railway company and abutting property owners in the use of a narrow street will be found in the case of *Birmingham Railway, etc., Co.* v. *Smyer*, 181 Ala. 121, 61 So. 358, 47 L. R. A. (N. S.) 597.

The third question, however, must be answered in the affirmative. Prior to 1890 our Constitutions contained no provision that "private property shall not  be  . . .
110 Miss.—13.

damaged for public use, except on due compensation being first made to the owner or owners thereof,'' so that, under the rule ''that the general good must prevail over partial individual inconvenience'' (*White* v. *Yazoo City*, 27 Miss. 357), the owner of private property was without remedy for any damage inflicted upon it for the public good. This rule was reversed by section 17 of the Constitution of 1890, as was pointed out in *King* v. *Railway Co.*, 88 Miss. 456, 42 So. 204, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749; and the right of the individual to the enjoyment of his property is now superior to that of the public to damage it for the general good. Formerly the public might use or authorize the use of its property in any manner consistent with the general good, without liability for any consequential damages resulting therefrom to the property of individuals; but now, while it may continue to use its property in any manner consistent with the general good, it must compensate the owner of private property for any damage thereby inflicted upon it. A municipality still has the right to permit the use of its streets by a street railway, but only upon payment to abutting property owners of any damage thereby inflicted upon them.

These views are supported by *King* v. *Railway Co.*, 88 Miss. 456, 42 So. 204, 6 L. R. A. (N. S.) 1636, 117 Am. St. Rep. 749, and by the original opinion in *Slaughter* v. *Railway Co.*, 95 Miss. 251, 48 So. 6, 1040, 25 L. R. A. (N. S.) 1265. It is true that the decision in this last case did not in the end turn upon the point here involved, but the carefully prepared and well thought out opinion of MAYES, J., dealing therewith, is unanswerable in its logic.

                                   *Reversed and remanded.*

IN RESPONSE TO SUGGESTION OF ERROR.

Counsel for appellees misunderstand what we intended to hold in our former opinion; this misunderstanding being properly caused by the incomplete statement, in the opinion, of the third question presented to us for determination. What we intended to hold was this:

Under section 17 of the Constitution a street railway company is without power to construct or to operate a street railway in the streets of a municipality until compensation has first been made to the abutting property owners for any actual damage which will result to them therefrom, and an injunction will lie to prevent it from so doing.

*Overruled.*

STEVENS, J., took no part in the decision of this suggestion of error.