WILLIAMS et al. v. CITY BANK & TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 11, 1911.)

No. 2,173.

1. APPEAL AND ERROR (§ 397*)—APPEAL IN OPEN COURT—PARTIES—CITATION—NECESSITY.

Where an appeal is taken in open court, it is taken against all adverse interests; all parties present in fact or in law being regarded as having notice without citation.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2101; Dec. Dig. § 397.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. APPEAL AND ERROR (§ 336\*)—APPEAL IN OPEN COURT—SEVERANCE—OBJECTIONS.**

Where an appeal was taken in open court from an order granting an interlocutory injunction, appellant's failure to summon and sever and notify parties was not a jurisdictional defect, but one which might be corrected in the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 336.\*

When summons and severance of parties on appeal or writ of error is authorized or required, see note to City of Detroit v. Guaranty Trust Co., 93 C. C. A. 608.]

**3. COURTS (§ 316\*)—JURISDICTION—REAL PARTY IN INTEREST—STATUTES.**

Act Cong. March 3, 1875, c. 137, § 5, 18 Stat. 472, continued and reenacted by Act Aug. 13, 1888, c. 866, § 6, 25 Stat. 436 (U. S. Comp. St. 1901, p. 511), provides that if it appear to the satisfaction of the Circuit Court, at any time after suit brought therein, that it does not really involve a dispute or controversy properly within the court's jurisdiction, or that the parties have been improperly or collusively made or joined to create a case cognizable under the act, the court shall proceed no further, but shall dismiss the suit or remove it as justice shall require. *Held* that, where a street railway and electric company, prior to default in the payment of principal or interest on bonds secured by mortgage, was entitled to possession of its property, and the only persons objecting to its right to lay double tracks on a certain street were the abutting property owners, a nonresident trustee for the bondholders under such mortgage was not entitled to maintain a suit in the federal court against the railway company, the city, and the objecting property owners, to restrain them from objecting to the laying of such additional track, on the allegation that such improvement was essential to the bondholders' security; that the bondholders were more deeply interested in the property of the railway company than any other corporation or persons; and that a failure of the railway company to lay such track would greatly impair the value of the bonds, etc., it being evident that the suit was instituted by the plaintiff as trustee to relieve the railway company, the real party in interest, from the necessity of resorting to the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 862; Dec. Dig. § 316.\*]

Appeal from the Circuit Court of the United States for the Southern District of Mississippi.

Suit by the City Bank & Trust Company and others against F. W. Williams and others to restrain defendants from opposing the Meridian Light & Railway Company from carrying out its purpose of double tracking its street railway on Eighth Street in the City of Meridian, Mississippi. From an order granting an injunction pendente lite, defendants Williams and others appeal. Reversed and remanded.

G. Q. Hall, for appellants.

W. E. Baskin and Wm. H. Armbrecht, for appellees.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge. This is an appeal from an interlocutory order granting an injunction pendente lite, and there is a motion to dismiss the same on the ground that all the defendants are not made parties to this appeal.

The record shows that immediately upon granting the injunction pendente lite "the said parties defendant thereupon in open court presented their petition accompanied by bond in the penalty of $500

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

signed by the United States Fidelity & Guaranty Company as the surety, conditioned as provided by law, which said bond is hereby approved, and, having filed and presented this said petition and assignments of error and done the other things necessary for the perfection of their appeal in the premises, it is ordered, adjudged, and decreed that the said appeal as prayed for be granted and allowed."

[1] When an appeal is taken in open court, it is taken against all adverse interests. All parties are present in fact or in law, and they have notice then and there. No citation is required. Chicago & Pacific Railroad Co. v. Blair, 100 U. S. 666, 25 L. Ed. 587; Brockett v. Brockett, 2 How. 238, 11 L. Ed. 251. And see Taylor v. Leeznitzer et al. (U. S. Sup. Ct. March 20, 1911) 31 Sup. Ct. 371, 55 L. Ed. ——.

[2] It follows that, whatever objection is urged in regard to the failure to summon and sever and notify parties in this case, it is not jurisdictional, and, as in the case above cited, the defect, if any, may be corrected in this court.

The motion to dismiss the appeal is therefore denied.

The bill in this case was filed by the complainant, a citizen of the state of Alabama, the trustee in a trust deed granted by the Meridian Light & Railway Company, a corporation created under the laws of Mississippi, to secure a series of bonds, naming as defendants the Meridian Light & Railway Company, the mayor and boards of councilmen and aldermen of the city of Meridian, and 40 or 50 persons, all citizens of the state of Mississippi, for the purpose of protecting the Meridian Light & Railway Company from all hindrance and opposition in double tracking by laying an additional track for the street railway on Eighth street in the city of Meridian, and, if the court has and should exercise jurisdiction, we find that, although the so-called restraining order issued in the case and from which no appeal was taken is subject to some of the criticisms of appellant, there is no good reason in the record for holding that the order granting an injunction pendente lite, which is the subject of this appeal, was improvidently or erroneously granted.

Our inquiry then is directed to the question whether the Circuit Court has, and should exercise, jurisdiction in the premises.

An examination of the lengthy bill and its exhibits, the charter of the Meridian Light & Railway Company, the deed of trust granted by it to complainant, the ordinances of the city of Meridian granting privileges and franchises to the railway company, the answers of the Meridian Light & Railway Company, and of the mayor and boards of councilmen and aldermen, and the answers of the private parties defendant to the bill, all too lengthy to be copied here, show only one controversy, and that a controversy primarily between the Meridian Light & Railway Company and the abutting property owners on Eighth street of the city of Meridian as to whether the light and railway company should be permitted to exercise its rights under its charter and franchise and double track Eighth street without previous compensation to the abutting property holders.

Aligning the parties to the record and according to interests involved, this controversy is between the trustee, complainant in the bill, the Meridian Light & Railway Company, the mayor and boards of

councilmen and aldermen of the city of Meridian, and, as we gather from the pleadings, the public interests generally, on the one side; while on the other side are the aforesaid protesting property holders.

[3] The question then for us to determine is whether the complainant, as trustee, and without showing any other interest than that it and the bondholders it represents will be benefited through enhancing the security and increasing the revenues of the light and railway company by the extension of its lines, can invoke the interference and protection of the United States Circuit Court in equity to decide the controversy; and this without averring that the failure of the light and railway company to avail itself of the permission and authority granted by the city of Meridian will result in impairing the security that the said complainant may now have to such an extent as to affect adversely the ability of the light and railway company to fully comply with all its obligations as stipulated in the deed of trust.

The bill avers:

"Your orator would further represent and show unto your honors that the said bondholders who are represented by your orator are more deeply interested in the properties of the said street railway company and the protection of it and the successful use of the same than any other corporation, person, or persons, and that, in order to meet the public demands and to properly use said property, it is necessary that the said street railway company should extend its street railway lines and further equip said street railway so as to further facilitate the purposes for which it was organized and incorporated, and to thus enable it to meet the interest accruing on the bonds held by your orator as trustee for the said bondholders, and to eventually liquidate and pay said bonds; that in order to do this it is now necessary for the street railway company to lay down double tracks upon other streets and avenues of the city of Meridian, and over Eighth street in said city of Meridian, which street leads from the business portion of the said city through one of the most thickly settled resident portions of said city, and over which said street there has been for a long time—15 or 20 years—a street car line, which has been constantly operated; that there is now and has been for a long time a single track operated by the present street railway company; and that the said street railway company, in order to meet the public demands, has placed also in said Eighth street, at different places therein, diamond switches or double tracks, which have been used by it for a long space of time in order to enable it to run its cars to meet the demands of the schedules which have been fixed at every 15 minutes during the hours when said cars are in operation."

Also:

"Your orator further charges the fact to be that its mortgage and bonds are and will continue to be greatly impaired if the said street railway, because of the threats of the various suits against it by the abutting property owners on Eighth street, declines or fails to perform its duty to the public and to carry out the charter purposes by laying double tracks along and over the said Eighth street."

Also:

"That a failure on said street railway's part to place the said double tracks on said Eighth street would greatly impair the value of the bonds held by your orator as trustee of the various bondholders, and in a large measure destroy their investments of the property of the said street railway company, thus inflicting irreparable loss upon the bondholders who are represented by your orator and destroy the security of the said bondholders, thus rendering their debt of little value."

These averments of conclusions show plenty of apprehension, but seem to be wanting in facts to show that the bondholders will be so materially damaged by the neglect of the light and railway company to lay the additional track that their trustee can appeal to a court of equity for relief. To increase the security will undoubtedly benefit the bondholders, and to lay more tracks may or may not increase the security; but we find nothing in the bill and exhibits showing any obligation on the part of the light and railway company to increase the security held by the bondholders. The averment in the bill that the "said bondholders who were represented by your orator are more deeply interested in the properties of the said street railway company and the protection of it and the successful use of it more than any other corporation, person, or persons" is a statement of an interesting conclusion that may be read in the light of the general rule that, unless otherwise stipulated, the mortgagor retains possession, operates and controls the mortgaged property, and receives the income thereof, and, until breach, is not liable to the mortgagee except in case of waste or active damage to the security; and, also, in the light of the stipulations contained in this particular deed of trust, the second paragraph of which reads as follows:

"So long as the said company, its successors and assigns, shall not make default in the payment of the interest or principal of said bonds or coupons as the same shall respectively become due and payable, and so long as the said company, its successors and assigns, shall faithfully pay, observe, keep and perform all the other covenants, conditions and agreements in the said bond in this indenture contained, the said company, its successors and assigns, shall be entitled to retain possession of the said railroad, lighting, heating and power lines, gas plant and pipes, rights, franchises and other property hereby mortgaged, and receive and enjoy the income thereof and operate the same as authorized by law"

—the fourth paragraph of which provides that the light and railway company may sell any portion of its rolling stock, horses, mules, implements, equipments, electrical apparatus, or machinery which may become useless, or any of its car sheds, shops, or other structures which may become useless or undesirable or unnecessary, providing that the proceeds of any such sale shall be invested in other needed property, and that the light and railway company may also make any local change in the line or construction of any portion of its lines, and for that purpose may take up portions of its said lines or track, etc., and abandon portion of its line, with the proviso that thereby the present length of the line shall not be diminished; and the fifth paragraph, which provides, in case default shall be made of the payment of interest on any of said bonds or default made in the performance of any of the covenants contained in the deed of trust, and said default shall continue for a period of six months, then, and only then, the trustee on the performance of certain requisites may take possession of the property and enjoy the rents and revenues thereof, etc.

Under these stipulations, nothwithstanding all the averments in the bill, it seems perfectly clear that, if this were a real controversy between the bondholders on one side and the light and railway company on the other, no court of equity on the showing herein made could intervene to control the management and operation of the light and street

railway company in the matter of laying or not laying an extra track. And it seems clear to this court that in this aspect of the case, if we concede the jurisdiction of the court by reason of diverse citizenship of the parties, the bill is without equity.

The separate answer of the light and railway company is made up of admissions of matters charged, and not directly charged in the bill, but all showing that the light and railway company has no controversy with the complainant in this case.

The answer of the mayor and boards of councilmen and aldermen of the city of Meridian also admits the matters alleged in the complainant's bill and clearly aligns the municipal authorities of the city of Meridian on complainant's side.

These answers decidedly emphasize the proposition that the only controversy in the case is one primarily, and in fact only, between the light and railway company and the protesting property holders, and we think upon the whole record we may safely say the whole purpose and object of the suit by the City Bank & Trust Company as trustee is for the purpose of investing the Circuit Court with jurisdiction in a case which does not really and substantially involve a dispute or controversy of which it should have cognizance.

And it seems clear from the whole record that the complainant only comes into the case to save the real party in interest, the light and railway company, the necessity of appealing to the courts of the state for its protection.

The fifth section of the act of March 3, 1875, continued and re-enacted August 13, 1888 (U. S. Comp. St. 1901, p. 511), provides:

"That if in any suit commenced in a Circuit Court or removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court at any time after such suit shall have been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined either as plaintiffs or defendants for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed as justice may require, and shall make such order as to costs as shall be just."

This statute covers the case in hand, and we are compelled to give it effect in our disposition of the same.

We have examined and given full consideration to the many cases cited wherein a trustee has been permitted to maintain a bill for the protection of the trust estate against third parties and therein assert the rights of the bondholders as well as the rights of the bonded company, of which Mercantile Trust Company v. Texas & Pacific Ry. (C. C.) 51 Fed. 529 (s. c., Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014), is a fair sample. The question in that case involved the power of the Railway Commission of the state of Texas to make railroad rates that the trustee averred and by specific facts and figures showed would, if forced on the Texas & Pacific Railway, be confiscatory of the earning power of the property to the great injury of the trust estate.

In that case Judge McCormick, in passing on the charge that the

suit was collusive and preagreed as to the defendant railway company, correctly said:

"It is apparent from the whole record and the conduct of this hearing that the controversy is not between complainants and the railways, but between the railways and the other defendants. The bills of complainants and the answer and cross-bills of the railways, and the arguments of their counsel, show that there is no such element of collusion in these cases as can prejudice the rights of complainants to sue. The cases cited and pressed by counsel for defendants on this point are plainly different from the cases here. The complainants here show equitable interest in the fair earnings of the roads; they show actual ownership and possession of the mortgage securities of the roads, both of which they allege are being irreparably injured and threatened with destruction by the defendants; they show that the railways are willing and want to meet all their obligations as mortgagors in possession, but that said railways are coerced by the defendants, armed with the railroad commission act, and the directors cannot exercise their judgment and discharge their duty as they should and would but for said coercion.

"It may be the railway companies could, under section 6 of the railroad commission law [Acts 22d Leg. Tex. 1891, c. 51], or without the authority of that section, have brought these suits and obtained all the relief to which the complainants are entitled against the other defendants, or it may be that they could not. If they could not, that would only be one additional reason why the complainants should sue; and, if the railways could have so sued, that would be no reason for denying the complainants any right, even if, as seems to be hinted rather than charged, the railways could only have resorted to the state courts; and that there was a previous understanding between the complainants and the railways that the relief complainants desired and believed themselves entitled to receive would be more likely to be speedily and adequately extended in the national courts. It was to meet such cases that the national courts were established. In them parties 'may hope to escape the local influences which sometimes disturb the even flow of justice.' Davis v. Gray, 16 Wall. 221 [21 L. Ed. 447]."

In all the other controlling cases we have examined in this connection we have found in each case where jurisdiction was maintained that there was a real controversy involved in which the trustee asserted an interest to be protected independent of the attitude taken by the mortgagor. If the present case showed that the light and railway company was being coerced by state or municipal authority, and such coercion would result in actual injury to the trust estate or even showed a real controversy in which the interests of the bondholders of the light and railway company were in danger of impairment and needed the protection of a court of equity to preserve their security, then Mercantile Trust Company v. Texas & Pacific Railway Company, supra, and like cases by the Supreme Court, would be cheerfully followed.

But as we are impressed with the facts in this case those cases are not applicable. And we may well observe that, if on the facts of this case we can maintain jurisdiction, then any state corporation that grants a deed of trust, naming therein a citizen of another state as trustee, can indirectly through the trustee appeal to the courts of the United States in any controversy with any resident citizen involving the minimum jurisdictional amount.

The decree of the Circuit Court appealed from is reversed, and the cause is remanded, with instructions to dismiss the bill, with costs.