HALL *v.* MERIDIAN LIGHT & RY. CO.

[76 South. 653, In Banc.]

EMINENT DOMAIN. *Injuries to abutting property. Doubling street car track. Declaration.*

The declaration by property-owners for damages caused by doubling a street car track, which is set out herein was held by the court to state a good cause of action.

APPEAL from the circuit court of Lauderdale county.

HON. J. L. BUCKLY, Judge.

Suit by G. J. Hall and wife against the Meridian Light & Railway Company. On the death of one of the plaintiffs, his executor, W. M. Hall, was substituted. From a judgment sustaining a demurrer to the declaration, plaintiff appeals.

This is an appeal from a judgment of the lower court sustaining a demurrer to the declaration filed by the appellant, which is as follows:

### Declaration.

Plaintiff G. Q. Hall, joined by his wife, Mrs. Kate Hall, complains of the Meridian Light & Railway Company, a corporation under the laws of the state of Mississippi, for this, to wit:

That whereas, heretofore, on to wit, the 19th day of October, 1910, and many years theretofore, and since and still is the owner of the lots 6, 7 and the west half of 8, block 22, Ball's survey of the city of Meridian, county of Lauderdale, and state of Mississippi, fronting south on Eighth street a distance of one hundred and fifty feet, or thereabouts, and running back between parallel lines along Thirtieth avenue to the center line of said block. That on said premises is situated the home of himself and family, together with a barn, outhouses, and other improvements. That the said Eighth street is a popular and populous residence street extending from the court-house in the business district, on Twenty-First avenue, west to Fortieth avenue, a distance of one and one-fourth mile, or thereabouts. Parallel with said Eighth street, and one block to the south thereof, is Seventh street, of practically the same length and dimensions. Parallel with Eighth street, and one block to the north thereof, is Ninth street. There follows in regular succession, numerical order, and parallel with Eighth street, the following streets, to wit, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Seventeenth, Eighteenth, Nineteenth, and Twentieth, all being of as great length as Eighth street, and of like width and parallel as afore-

said. That the said Meridian Light & Railway Company owns and operates an electric street railway system on and along divers of the streets and avenues of the city of Meridian, and claims to own and control a monopoly of the streets, avenues; and public thoroughfares of said city. That prior to October 19, 1910, the defendant street car company owned and operated one line of track located centrally on said street. That for some months prior to said date, defendant corporation conceived the idea of appropriating said street to practically its own exclusive uses and purposes, regardless of the rights and wishes of the property owners thereon, and procured from the municipal authorities permission to do so, in so far as they could legally do, but no further. The owners of property abutting on said street possessed rights therein which were and are property and cannot be taken away without their consent, or upon due compensation in the way and manner prescribed by law.

Said defendant could not, either with or without the city's consent, appropriate or subject said street to its monopolous uses, so as to interfere with public travel thereon, and thereby create a private or public nuisance; neither could it take away or impair the rights of abutting owners without their consent or without making due compensation as provided in section 17 of the Constitution of the state of Mississippi prohibiting the taking or damaging of private property for public use as except upon due compensation first made. So the said corporation set about to procure the consent of the property owners to its monopoly of said street, making divers and sundry promises of future benefits and concessions, and falsely promised to relieve them from the expense of street paving and the like, whereby some of the said property owners were misled into consenting to the commission of the proposed outrage upon their rights, based upon promises fraudulent in their nature and which were never intended to be performed, and which in point of fact were never fulfilled or performed. And some of the said property owners were thus falsely

and fraudulently misled into signing away their rights therein to the said street car company, but others of said property owners declined to do so. The property owners had already many years theretofore consented to the location, construction, and operation of one line centrally on and along said street whereof nine feet or thereabouts of said highway had become perpetually set apart and appropriated to the uses of said street car company.

Plaintiff shows that said street from Twenty-Sixth avenue west is thirty-six feet in width between curbs. The building of said track centrally therein covered an actual width of five feet and two inches, and the operation of its cars about two feet on each side or practically a space of nine feet, leaving an unobstructed driveway on either side of thirteen feet, or thereabouts, for the accommodation of public travel in the ordinary modes and for the accommodation of abutting property owners in the enjoyment of their respective properties, and homes located thereon. But they could not consent that said company should appropriate so large a part of said street as would be required for the accommodation of two lines of track, for the reason that it would be tantamount to the appropriation of the whole street for street car purposes, leaving insufficient space between said track and curbs for travel in the ordinary way, and would too greatly burden the property owners' rights in said street, and would subject them to the many annoyances of dust, noise, and the dangers and inconveniences incident to an excess of street car use, misappropriation, and monopoly. They declined to assent to the double-tracking of said street, and in order to place the matter beyond peradventure, the following named persons, owning property on said street, to wit: F. W. Williams, Mrs. E. F. Stafford, G. Q. Hall, Beatrice Cohn, Mrs. A. S. Boseman, Mrs. R. P. Hall, Mrs. J. J. Maloney, Mrs. C. C. Williams, Mrs. Cliff Russell, Miss Leila Mae Smith, Mamie Henley Williams, Mrs. S. C. Stoutz, Green Thomas, Mrs. Jessie Bounds, Mrs. Weddington, Mrs. L.

E. Evans, Mrs. D. E. Welch, A. G. Weems, G. A. Aden, L. P. Brown, F. C. Harvin, R. Y. Welch, Wm. Wright, J. W. Green, Mrs. C. Phillips, Mrs. A. N. Griffin, Mrs. Geo. A. Griffin, J. W. Stafford, Mrs. L. P. Whittaker, Mrs. W. W. Apperson, W. M. Stallworth, J. M. Stallworth, J. M. Harwell, Mrs. J. M. Harwell, Mrs. J. D. Harwell, Mrs. W. W. Cummings, Mrs. Matzner, Irvin Bounds, Mrs. Leta L. Bell, A. McMillan, W. W. Cummings, Edw. Funkenstein, R. H. Suttle, Misses Griffin, J. J. Maloney, A. McWright—in writing of date the—— day of June, 1910, gave notice to the municipal authorities and the street car company as follows, to wit: ''We, the undersigned owners and lessees of property abutting on said Eighth street of the city of Meridian, hereby protest against the proposed double-tracking of said street, and we direct that a copy hereof be furnished the municipal authorities and the Meridian Light & Railway Company. We further request that the proposed paving of said street be proceeded with as speedily as practicable. This June 2, 1910.'' And a copy of the same was furnished A. B. Patterson, general manager of the street car company, in connection with another paper, reading as follows, to wit: ''Dear Sir: We beg to herewith hand you a copy of paper protesting against the double-tracking of Eighth street, and expressing the wish of the signors for the speedy paving thereof.''

They show that the money had been, for some time theretofore, provided for the paving of said street upon the usual terms, and the property owners were anxious that the same work of paving should be speedily done, for while other streets were being paved, Eighth street was maintained in an unpaved condition, and the money which had been provided for that purpose permitted to lie idle, though the property owners were paying interest on said funds. The reason for such a state of affairs was manifest, to wit, the municipal authorities deferred action for the accommodation of the said street without consulting the wishes of the abutting property owners,

and which the said property owners so unrelentingly resisted.

Under the fundamental law private property cannot be taken or damaged for public use except upon due compensation first made. This provision of section 17 of the state Contitution afforded them the protection they desired, as well as the further fact that the said street was inadequate width to accommodate two street car lines, and travel in the ordinary way, at the same time. Neither could they consent to have their resident street bodily appropriated to the uses and the insatiate greed of this corporate monopoly, and especially were they opposed to having their residence street converted into a trunk line or commercial thoroughfare. Thus thwarted in its efforts to appropriate the said street and recognizing that any effort to do so by force would likely be met with like resistance, the said Meridian Light & Railway Company, its officers, agents, and attorneys, set about to procure maliciously and without probable cause an injunction order whereby under the semblance of legal authority the wishes and rights of the abutting property owners might be defeated and the said· street thus wantonly, willfully, and maliciously taken and appropriated to its wrongful uses under the guise and protection of such writ of injunction.

With such purposes and object in view a bill in equity was prepared seeking to restrain the abutting property owners from interfering with the said street car company in its appropriation of said street, and in making such excavations as it might see proper therein, and the establishing its double tracks therein, and the state courts could not and would not afford it any relief or the protection of any injunction while engaged in the accomplishment of its illegal purpose; and while it recognized that the federal court was equally powerless in the premises, and possessed no jurisdiction of the controversy existing between said street car company in its desire to so appropriate said street and of the abutting property owners in their unalterable determination to resist the

purpose of said street car company, still application was
made to the United States circuit court for the Southern
District of Mississippi for a writ of injunction for the
accomplishment of said purpose. The said court being
without jurisdiction, any order made would be a nullity,
though the street car people recognized that plaintiff and
the other property owners involved were good and law-
abiding citizens, and would be obedient to the process of
any court, state or federal, however wrongfully or im-
providently granted, or however furnished or maliciously
procured so long as the same might remain operative,
and the said Meridian Light & Railway Company,
through its regular attorneys, applied for and procured
on the bill so prepared a federal injunction of date the
19th day of October, 1910, under a bill styled the *City
Bank & Trust Company, Trustee,* v. *Mayor and Board
of Councilmen and Aldermen of the City of Meridian
et al.,* to which plaintiff herein and all the other abutting
property owners on said street were made parties de-
fendant.

The said injunction was procured maliciously and
without probable cause; the controversy touching the
double-tracking of said street was a controversy between
the Meridian Light & Railway Company and the abutting
property owners, which was a local controversy between
the citizens of the state of Mississippi, whereof the
federal courts had no jurisdiction—a fact well known
to the street car company and its legal counsel. The
use of the name of the City Bank & Trust Company
as complainant in said suit was a fraud on the juris-
diction of said court, and was employed for the sole
purpose of giving semblance of federal jurisdiction, in
that the said City Bank & Trust Company was a non-
resident of the state of Mississippi, and a resident of
the state of Alabama, and its want of jurisdiction in
the premises was thereafter so held by the federal ap-
pellate courts, as will be presently noted.

Plaintiff shows that immediately upon the grant of said injunction *ex parte* and without affording him and the abutting property owners any opportunity to be heard, the Meridian Light & Railway Company at an early hour of the following morning, by force and arms under the protection of said writ and the United States martial, took possession of said street and proceeded forthwith to make excavations therein, tearing up and removing the old track therefrom, and changing the location from the center of said street to the south side thereof, and proceeded with all due haste to put in a second track on the northerly side of said street, and another track on the southerly side thereof, and from the date of the said taking possession thereof, and thence on until the 5th day of January, 1911, said work of double-tracking was pushed with extraordinary vigor until completed, and then, and not until then, was a hearing accorded them.

Plaintiff shows that the said court had no jurisdiction either of the subject-matter or the parties, and if the jurisdiction had existed, it is a federal court, was prohibited by the federal statutes, to grant an injunction in the absence of a hearing, with right of immediate appeal to the United States circuit court of appeals from any order that said circuit court might make after such hearing. He shows that the only exception to the said merciful, wholesome, and righteous rule of the federal statutes in that regard is that a temporary restraining order may be had in advance of a hearing where irreparable injury would otherwise result from any delay in hearing, but then only for the purpose of maintaining the *status quo* pending a hearing.

Defendant, the Meridian Light & Railway Company, well knew that the said court had no jurisdiction of said cause, predicated, as it was, upon diversity of citizenship, and that even if jurisdiction did exist, because of such diverse citizenship the said federal judge had no power to grant an injunction anticipatory

of the result on final hearing, or to other than grant a temporary restraining order to maintain the *status quo* pending a hearing. So that, in taking possession of said street in the way and manner that it was done, and appropriating the same to its own use, and making excavations therein, and laying its cross-ties and rails and changing the location of the old track by several feet and building its double tracks therein, its acts were willful, malicious, deliberate, premeditated acts of trespass, without a semblance of authority, in defiance of the rights of the citizens and of plaintiff and other property owners involved. He shows that the general counsel and the local counsel of the Meridian Light & Railway Company prepared and signed the said bill and procured the said *fiat,* and directed the said unlawful proceedings and appeared as complainants' counsel in the United States circuit court and in the United States circuit court of appeals.

Your orators further show that not only did the Meridian Street Car Company commit a most flagrant and wanton outrage upon their rights, as aforesaid, but it went further and aggravated the wrongs so being perpetrated in that with several hundred noisy, irresponsible negroes, singing, yelling, and guffawing, it proceeded with said work by night and day twenty-four hours per day in utter indifference and disregard of consequences. The goverment's writ of injunction and the presence of the government's officers were sufficient to restrain violence, or prevent the exercise of the right of defense. In addition divers and sundry carloads of cross-ties and steel rails of unusual size, weight, and dimensions were being constantly both day and night hauled in carloads along said street and dumped from the cars, and then pounded with sledges and other hammers and appliances, whereby unearthly noises were produced akin to the deafening din, jar, and roar of a boiler factory. That sort of conduct, for the duration of more than two months and until the work of usur-

pation and outrage was completed, was indulged in a civilized community, and was tolerated because no sort of redress was accorded them, though they were clamorous for a hearing, which the law itself guaranteed.

Promptly plaintiff and others similarily circumstanced procured counsel and prepared and filed their answer by the date named in said bill, to wit, November 7, 1910, accompanied by affidavit as to existing conditions, and at said date (being the date named in said writ of injunction for hearing, and at the time and place named, to wit, Monday, the 7th day of November, 1910, at the federal courtroom in the city of Jackson) they appeared by counsel with their said answer, and their motion resisting the grant of any injunction, and also seeking to dissolve the injunction already granted under the guise of a temporary order and announced ready and demanded a hearing. But defendant's counsel resisted a hearing, and a continuance was granted over their protests until Wednesday, the 19th day of November, 1910, at which time and place their counsel again appeared and demanded a hearing. But an indefinite postponement was then ordered over their protests till a date not named in December. Thus matters stood until January 5, 1911. On said date (January 5, 1911), at the city of Vicksburg, they were given a hearing, and both of their motions were overruled and denied, and an appeal was promptly then and there taken to the United States circuit court of appeals. And said court of appeals reversed the action of the lower court and remanded the cause, with instructions to dismiss for want of jurisdiction.

The opinion in said cause is reported under the style of *Williams et al.* v. *City Bank & Trust Co.*, 186 Fed. 419, 108 C. C. A. 341. Thereupon the said cause was taken to the United States supreme court on application to have same reviewed on *certiorari*, and a hearing was not had on the 11th day of December, 1911, and on the following Monday the said application was denied, and

115 Miss.—49

the said supreme court affirmed the action of the court of appeals, and issued its mandate duly to the said court of appeals, which thereupon put in force its former order to the United States circuit court to dismiss the said cause for want of jurisdiction. And pursuantly on the ———— day of December, 1911, a final decree was entered by the said United States circuit court for the Southern District of Mississippi at Meridian, finally disposing of said cause for want of jurisdiction, whereby said injunction was dissolved.

Plaintiff shows that Eighth street was, prior to November, 1910, cumbered only by a single track for a period of fifteen nor twenty years, by the permit of the abutting property owners, but the track so permitted to be laid, and whereon its cars were operated for that length of time, was in the center of said street, and adequate space left on either side for other travel. The width of said street between curbs from Twenty-Sixth avenue to Fortieth avenue, a distance of fourteen blocks, is thirty-six feet. The track as laid was five and one-sixth feet between rails, measured from the outer edge. The cars in passing extend twenty-two inches outside of the rails on either side, covering a total space of about nine feet. There is thus left a strip of thirteen and one-half feet on either side for travel by the ordinary means. Such are the conditions to which the public had voluntary assented, and which they had tolerated for fifteen or twenty years. In other words, the occupants and owners of property abutting on said street were willing to tolerate such a burden upon their rights upon the condition that ample space be left on either side to accommodate travel and to leave unobstructed ample means of access to and from their homes and property. But they were unalterably opposed to further obstruction or of interference with their rights in the premises, and especially were they unwilling to have their street bodily appropriated to the use of the insatiable greed of said street car company, attended by a manifest increase of inconvenience, dust, and danger.

Defendant company, through its willful, unlawful, malicious, high-handed and oppressive methods aforesaid repudiated the permit theretofore granted to it by the abutting property owners to build, maintain, and operate its one line of track in the center of said street, and under the protection of its said unwarranted federal injunction, procured maliciously and without probable cause, seized the said street and excavated the same to the depth it saw proper on both sides of the central line and out to the curb, and then tore up and removed the lawful track theretofore centrally laid therein, and proceeded to permanently establish, construct, and put in operation two other tracks not authorized, the one on the south and the other on the north side of said street, with a space between the outer rails and the curbs of ten feet and seven inches, or deducting the space or distance covered by the extension of the cars beyond the track, of practically two feet on either side, leaving a travel way of only eight and one-half feet between passing cars and the curb on either side. Thus one of the most populous and popular residence streets in said city has been seized and wrongfully appropriated and confiscated to the uses of said street car company, and is measurably destroyed for all other purposes.

Said street has been rendered exceedingly noisy, dusty, and dangerous, and the cars in use thereon have been so greatly increased in size as to cause them to produce as much noise as an ordinary box car of unusual size on a steam railroad, and to render present living on said street nigh akin to what the conditions would be if the traffic thereon was operated by steam power. Carriages and wheel vehicles cannot pass each other at the same time that cars are passing, nor can those drawn by animals be hitched or left standing at the curb in front of the premises abutting on said street, nor can other vehicles pass them while so hitched or standing without incurring the dangers of getting onto the said car tracks and being destroyed, and de-

fendant street car company has increased the number of cars operated thereon to double the number theretofore; that is to say, has abolished the fifteen minute schedule that formerly obtained, and there is reasonable probability of a further increase and frequency of passage of the cars to meet the growth of population and demands of traffic.

He shows that accidents have become quite numerous from collisions between cars passing vehicles, and the vehicles drawn by animals are abandoning said street, though once more frequented, and are not now disposed to use said street because of the increased risks, and that class of travel thereon is becoming less and less frequent, and said street will soon be given over to the sole use of street car company. But heavy delivery wagons, for coal, lumber, brick, provisions, and otherwise supplying the needs of the inhabitants thereon, are forced to run the existing risks of said double tracks on said street. Plaintiff shows that the said injunction was procured through fraud and malice and without probable cause from a court devoid of jurisdiction, and defendant, under protection of said spurious writ, proceeded to the accomplishment of its said illegal purpose with a high hand, willfully, maliciously, and wrongfully, in reckless disregard of plaintiff's rights, and persisted therein for more than two months and until the appropriation of said street was fully accomplished. And he shows that the said wrongs were further aggravated and the willful and wanton recklessness thereof was further accentuated by the fact that a hearing of plaintiff's motion to dissolve was by defendant resisted and prevented and postponed, and that the protective force of said injunction thereby maintained until defendant's wrongful and illegal purpose was accomplished and consummated, when, and not until then, an opportunity was afforded to have the illegal and spurious character of said injunction judically declared, and the said wrongful and illegal proceedings ordered dismissed by order of a high court.

All to the damage of plaintiff the sum of five thousand dollars, and therefore he sues.

G. Q. HALL, HALL & JACOBSON,
Plaintiff's Attorneys.

*Green & Green,* for appellant.

*Baskin & Wilbourn,* for appellee.

SMITH, C. J., delivered the opinion of the court.

While this declaration contains a great deal of irrelevant matter, it does distinctly allege that the laying of the second track has resulted in damage to appellants' property, for which, under *Williams* v. *Meridian Light & Railway Co.,* 110 Miss. 174, 69 So. 596, they are entitled to recover. The demurrer, therefore, should have been overruled.

*Reversed and remanded.*

STEVENS, J. (dissenting).

The sole question presented is whether the declaration sufficiently states a cause of action; whether it claims damages that the law recognizes and allows. The declaration is rather unique. The tongue of the pleader in dictating the document seems to have been unbridled and the pleading as a whole presents a general written assault on the defendant, the defendant's counsel, and the federal court which took jurisdiction of a prior injunction suit involving this same controversy. As well stated in the majority opinion, the declaration "contains a great deal of irrelevant matter," and the court is compelled to search a mass of wholesale criticism stated in unrestrained language in order to separate the good from the bad and determine the real negligence or wrong complained of. The statement of the litigation in the federal court has no bearing upon the right of the plaintiff to prevail in the present litigation. This is not a suit for the malicious prosecution of prior litigation, and the circuit court of ap-

peals in disposing of this prior litigation expressly stated in its opinion that:

"There is no good reason in the record for holding that the order granting an injunction *pendente lite,* which is the subject of this appeal, was improvidently or erroneously granted." 186 Fed. 419, 108 C. C. A. 341.

The substance of the complaint in this case, as I see it, is about as follows: That appellants, the plaintiffs in the court below, are the owners of the premises fronting one hundred and fifty feet on Eighth street in the city of Meridian on which is located their home; that the appellee is a corporation owning and operating under express license from the city of Meridian a street railway system on and over various streets of the said city; that appellee company had been operating a single track on Eighth street for some fifteen or twenty years; that Eighth street is thirty-six feet wide from curb to curb; that appellee by permission of the city authorities built an additional track on Eighth street, or "double-tracked" its line on Eighth street; that plaintiff and other property owners filed a written protest; that from this written protest it appears that Eighth street was being paved and the street railway company wanted to double-track its line before the pavement was put down. It further appears that in the written protest, appellants requested "that the proposed paving of said street be proceeded with as speedily as practicable," but objected to the double-tracking of the street. It is then claimed that the double-tracking of this property operated to damage the private property of the plaintiffs, and that under section 17 of the Constitution plaintiffs had a right to recover damages. The elements of damage relied upon by the plaintiffs are: First, that in the construction of this additional track, appellee was compelled to haul many carloads of crossties and rails and to dump them from the cars onto the ground, and that in laying the track the company used several hundred negroes who made an unusual noise in front of the plaintiffs' property. It is further charged

that this noisy construction work proceeded under the protection of an unwarranted injunction. It is then charged that the street has been rendered more noisy, dusty, and dangerous by the increased number of cars to be operated upon a double track.` The next element of damage relied upon is that when cars are passing, vehicles drawn by animals cannot be left standing hitched at the curb in front of plaintiffs' premises. The declaration as a whole shows that the width of the street is thirty-six feet; that the space between the inner rails of the double tracks is five feet; that the space between the outer rails and the curb is ten feet and seven inches; and that a car would overlap the outer rail twenty-two inches. It is further shown on the face of the declaration that there is a clear space between a moving or standing car and the curb of eight and one-half feet. There is some basis for the calculation that there is a clear space between the nearest curb and any passing car of eight feet and nine inches. It is needless to say that the averments of facts must prevail over the mere conclusions of the pleader, and that if there is a conflict between the facts stated and the conclusions charged, then the facts must prevail. As I construe the declaration, there is no positive showing that appellants' right of ingress and egress is invaded or seriously interfered with. There is certainly no showing that appellee has touched the plaintiffs' property in any respect. There was no invasion or taking of the plaintiffs' property, and this is not a case also where the defendant has emitted smoke, cinders, or other deleterious agencies onto the plaintiffs' property. What, then, is the real complaint? It must be answered that the complaint is based altogether on the mere double-tracking of Eighth street without a showing as to how this double-tracking will in any wise interfere with the free use and enjoyment by the plaintiffs of their property. They can use their home as well after the double-tracking as before. There is ample room for vehicles to pass between moving street cars and the curb of plaintiffs' lot. The plain-

tiffs can hitch a horse in front of their home or leave an automobile or other vehicle standing by their curb..

The question of whether the laying of a surface street railway system is an additional servitude has been presented to this and other courts with much ability and learning, and I shall not enter into any elaborate discussion of that subject. It was answered by our court in the very case relied upon by the majority opinion for reversing the present case. In this case of *Williams* v. *Meridian Light & Railway Co.*, 110 Miss. 174, 69 So. 596, it was expressly held that the laying of a second track by this very street railway company did not impose an additional servitude upon the street, and also was not "a public nuisance." The court there asked and answered both questions, stating:

"It seems to be settled by the great weight of authority that the first two of these questions must be answered in the negative, in so far as they are governed by common-law principles alone."

But proceeding, the court did hold that under section 17 of the Constitution the company was without power to construct or operate a street railway on the streets of Meridian "until compensation has first been made to the abutting property owners for any actual damage which will result to them therefrom, and an injunction will lie to prevent it from so doing." Recognizing, then, and following this opinion, the only question is whether the plaintiffs have sustained "any actual damage." What is "actual damage"?

There can be no recovery in this case for the alleged noise and the temporary obstruction in the street in laying the additional track. It is manifest that while the temporary noise of the construction gang might have inconvenienced the plaintiffs for a short while, it was not and is not a damage to their property. The declaration is bottomed upon section 17 of the Constitution, and the plaintiffs themselves rely upon this section of the Constitution and charge in general language that their "property" has been damaged. This is not a suit for

personal inconvenience, but for the alleged permanent damage to the real estate. As a matter of course the laying of an additional track could not be accomplished without the services of employees and without the use of cross-ties, rails, and other material. The temporary obstruction of a reasonable portion of a street for laying public improvements and constructing buildings has always been permitted in every city. In the case of *Callanan* v. *Gilman,* 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831, the court, by Earl J., said:

"An abutting owner engaged in building may temporarily incroach upon the street by the deposit of building materials."

This statement was approved by Mr. Freeman, in 1 Am. St. Rep. 831, and the principle has been uniformly approved by all courts. There is, then, nothing in the averment of the declaration that various and divers carloads of material were hauled and placed along the street. There was no showing that there was an unreasonable deposit of material, or that any greater length of time was consumed in the construction than was absolutely necessary.

There can be no recovery also for the noise usual and incidental to the operation of cars along Eighth street. This was the express holding of our court in *Dean* v. *Southern Railway Co.,* 112 Miss. 333, 73 So. 55, L. R. A. 1917C, 346. The note to this last case in the L. R. A. points to other authorities on the subject. Nor is the laying of a double track in itself an unwarranted use of the highway. Before the laying of a double track would be actionable, the plaintiffs must show sufficient circumstances resulting in damages to them which the public generally do not suffer. There must be some invasion of the plaintiffs' right of ingress and egress or actual depreciation to their property. In the present case appellee had not only been chartered to operate a street railway system in the city of Meridian, but had been occupying Eighth street for many years. This street is reasonably wide and commodious. The double tracking

of this street does not amount to a nuisance, and does not interfere with the plaintiffs' ingress and egress. Of course, neither a street railway company nor any other public agency has a right to close a householder's front gate and force him to enter his home through the back way. A street railway company cannot run over the plaintiffs' property or seriously interfere with his use and enjoyment, by swerving its track too near the curb line. A case similar to the present was that of *Birmingham R. R. L. & P. Co.* v. *Smyer,* 181 Ala. 121, 61 So. 354, 47 L. R. A. (N. S.) 597, Ann. Cas. 1915C, 863. That case involved the laying of a double track, and the street there was only 34 feet in width. The court, by Mayfield, J., among other things, said:

"We do not think that the laying of a double track in the street, which is thirty-four feet in width, and in the manner alleged in this bill, is an unwarranted use of the highway, and one not included in, nor contemplated by, the original dedication of the street in question. If one line of the kind in question is for the purpose of 'facilitating travel,' and 'imposes no additional burden upon the abutting owner,' nor a 'new servitude' upon the land, for which the owner is entitled to compensation, but is 'only an improved method of using the street for public travel,' then two lines or a double tracking of the same line, provided the public travel justifies and demands the same, must fall within the same category. It may be that one line or a single track will not afford proper or adequate means of transportation for the requirements and demands of a growing city; and, if not, then we can see no actionable wrong in the city's allowing or providing for two or more lines upon one street. We do not mean to say that a city cannot exceed its authority in placing so many car lines and cars on a given street as to constitute an additional burden, or a new servitude, not contemplated or intended in the dedication of the highway; but what we mean to decide is that a double track on the street in question, under the conditions shown in the

bill, is not such an additional burden or servitude as would entitle the owner of an abutting fee to compensation. It is, we think, practically certain that the street in question will be as safe and as convenient for public travel in other vehicles, after the two tracks are laid, as now.

"It is very true that complainant and others who desire to have wagons and other vehicles stand at or near the curbing for the purpose of loading and unloading goods and freight may suffer some inconvenience; but, as we showed at the outset of the opinion, this is a convenience allowed them by the law, which must yield to that of public travel along the street, whether it be in cars, in wagons, on horseback, or in automobiles, or in omnibuses. The old adage that 'the street car is the poor man's carriage' is modernized so that the saying now is, 'The street car is the poor man's automobile.' The streets are primarily for public travel, for pedestrians and vehicles and conveyances in motion, and not for the purpose of their standing thereon. One of the laws of the road is, 'Move on; don't stop.' The policeman on duty in a crowded street proclaims it when he continually shouts, 'Move on; don't block the street or sidewalk.' If the street in question is much used by many people in vehicles, as is alleged, then the complainant's right to stand his wagon in the street, at his curb, must yield to the right of the many people to pass along the street, if both cannot be done at the same time. His rights and those of the public, the many travelers of the highway, are the same, whether they all be in wagons, carriages, omnibuses, automobiles, or in the street cars, except that the street cars must move on a fixed track, and cannot turn to the right or the left, as can other vehicles. The right of the public to pass is paramount to the right of the individual to stand."

I have quoted freely from this opinion because the learned judge in that case well states my views of the present case. He there well says that the street car is

a poor man's automobile. Without a street railway system or its equivalent, a large city would be impossible. In the larger cities street cars are a necessity to the great army of employees and children attending schools. The laying of the track does not monopolize the use of the highway. The tracks are required to be laid in such manner as not to interfere with the free use of the street by other vehicles, and, as said by Judge MAYFIELD, the law of the street requires all to "Move on." It is not contemplated that street cars will stop in front of the plaintiffs' property, and the time when a car would be immediately in front of the plaintiffs' gate would be momentary. Its presence does not interfere with the plaintiffs' easement of light and air or access to the street, as is the case sometimes in the construction of elevated roads. The construction and operation of a street railroad promotes the very use for which the highway was originally dedicated. As stated by Mr. Nellis in his work on Street Railways, vol. 1, par. 82;

"The ordinary electric street railway with its trolley wire supported by cross-wires attached to poles near the outer edge of the sidewalks, with due regard to the abutting property owners' convenience, is but an improved method of using the street for public travel. There is no limit to the public right to use a street, and every part of it, so long as that use is in aid of public travel thereon and does not interfere unnecessarily with the common use of the way by ordinary modes of travel, and is no substantial impairment of private rights to property. Compared with a horse car, the electric car more certainly promotes the primary object of the highway. It moves more rapidly, is started and stopped with greater facility, and will more comfortably, and without obstructing the streets as much for travel by other means, move the greater number of persons the greater distance in a given time."

It must be remembered that appellee, then, is engaged in a lawful business, and that plaintiffs are in the attitude of claiming special damages caused by the opera-

tion of a lawful business. I take it that the framers of our Constitution employed the use of the word "damaged" in the sense in which the courts were accustomed to construe that word. The supreme court of Washington, in the case of *Taylor* v. *Chicago, M. & St. P. R. Co.*, 85 Wash. 592, 148 Pac. 887, L. R. A. 1915E, 634, quotes to approve the language of the supreme court of Georgia in *Austin* v. *Augusta Terminal R. Co.*, 108 Ga. 671, 34 S. E. 852, 47 L. R. A. 755, as follows:

"In a popular sense, the word 'damage' does frequently mean depreciation in value, whether such depreciation is caused by a wrongful or a lawful act; but in statutes or other legal instruments giving compensation for 'damages' the word always refers to some actionable wrong—some loss, injury, or harm which results from the unlawful act, omission, or negligence of another. In this sense, and as a well-defined law term, it was used in the Constitution to give the owner of private property compensation for the actionable wrong whereby his property had been damnified, but it did not give him compensation for depreciation in value caused by any legal act, since in law such an act was innocent, and therefore harmless, or, if not actually harmless, '*damnum absque injuria.*' There is nothing in the language of the Constitution or in the debates, or in the proceedings of the convention, which shows any intent to enlarge its definition, or to make it mean more than it had always meant as a law term."

The mere laying of a street car track does not *ipso facto* confer a right of recovery. There must be a showing of some damage which the law recognizes. As stated by Mr. Nellis in paragraph 80:

"Such an owner is entitled to the use of the street as a means of access to his property, and for light and air, whether the fee of the land in the street is in the municipality in trust for the purpose of public travel or in him subject to the public use, and of these rights he cannot be deprived without compensation."

Any interference with these rights would operate to depreciate the property, and such rights would be safeguarded by section 17 of our Constitution. Deleterious agencies could not be projected upon the plaintiffs' property. But the present declaration does not make it a case where any of these rights are violated by the defendant company. This case is to be remanded for a new trial. What, I ask, is to be presented to the jury? There must not only be an averment, but proof of some depreciation to the rental or market value of the property, and under the present pleading no such issue can possibly be presented to the jury in this case, and, if presented, there could be given the jury no legal guide except a peremptory instruction to find for the defendant.

In filing these reasons why I dissent, I suggest that the reporter set out the declaration in this case in full, since the document must be construed as a whole and all admissions therein construed more strongly against the pleader.